Alfred GRUNWALD et al., Appellants,

v.

Freida GRUNWALD et vir, Appellees.

No. 15948.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 19, 1972.

Rehearing Denied Nov. 16, 1972.

ties, and for an accounting of the proceeds derived from the sale of certain property. The trial court withdrew the case from the jury and rendered judgment that appellants take nothing.

Under the wills of appellants' grandmother and grandfather their mother received a life estate with the remainder to the six children of appellees. The grandfather died in 1936 and on probate of his will the grandmother qualified as independent executrix without bond. The grandmother died in 1938 and her will was probated in Ft. Bend County on January 24, 1940. Freida Grunwald qualified as independent executrix on the same day and filed an inventory. The inventory was approved February 13, 1940. It showed among the assets the land involved in this suit.

On July 29, 1941, all of the Grunwald children executed a quitclaim deed conveying all of their interest in about 63 acres of Rosenberg Farms, some lots in the City of Rosenberg, and 75 acres in Jackson County. The instrument recited as consideration the sum of $1.00 paid to each grantor and the love and affection that they bore for their mother. The deed then reads, the grantors "bargain, sell, release and forever quitclaim unto . . . Freida Grunwald, as *her separate property and estate*, her heirs and assigns, all of our right, title and interest that we own, or may claim as remaindermen . . . " (Emphasis ours unless otherwise indicated.) The habendum clause reads:

"To have and to hold the said premises, . . . unto the said Freida Grunwald, *as her separate property and estate* . . so that neither we the said Alfred Grunwald . . . Ruby Grunwald . . . nor our heirs, nor any persons claiming under us, shall at any time hereafter, have, claim or demand any right or title to the aforesaid premises . . . "

The paragraph immediately preceding the habendum clause expressly declares that it is the intention of the grantors to convey to the grantee "all right, title and interest in

---

Schlanger, Cook & Cohn, Joel W. Cook, Houston, for appellants.

Maurice A. Lehmann, Houston, L. F. Hardin, Rosenberg, for appellees.

BELL, Chief Justice.

Appellants, who are brother and sister, sued their mother and father, the appellees, seeking to recover an undivided one-third interest in an estate remainder in certain land lying in Jackson and Ft. Bend Coun-

and to all property that they may have or own an interest in by reason of being heirs of Joe Luttich and Ann Luttich . . . "

In December 1969, Alfred and Ruby filed suit against Freida and her husband alleging appellees represented that in order to realize benefits of an oil, gas and mineral lease it was necessary for plaintiffs to execute an instrument authorizing the collection of the proceeds by Freida. Further it was alleged that they did not admit their signatures, but if they did sign the instrument the signatures were obtained by fraud and deception. Further it was alleged there was no consideration for the quitclaim deed. By the alleged deception the plaintiffs allege they were prevented from revoking the instrument and that the deed should be set aside, or "in any event" these representations and the deception were evidence of a constructive or resulting trust. Prayer was that the deed be cancelled and plaintiffs be declared the owners of an undivided one-third interest in the remainder and for an accounting for the proceeds of the land sold. There was a prayer for general relief.

The appellees, among other defenses, plead the four year statute of limitation, laches and a gift.

Appellants called Freida Grunwald as an adverse witness. She testified she and her husband had an attorney, Mr. Risinger, prepare the deed. She had not discussed it with appellants. Mr. Risinger was to explain the deed to the children and have them sign it. She claims the land as her own under the deed. In answer to various questions as to the purpose of the deed she gave varying answers. She first said the purpose was "for leasing the land." She then said they asked Mr. Risinger to fix up the deed and get the children to sign it so "we could lease it." At another point she stated the purpose was to enable her to "lease it for oil and gas and sell it." The children gave her no property or money for the deed. She sold a 75 acre tract of land in Jackson County in May 1967 for $22,750.00. In 1963 she had sold some lots in Rosenberg

for $6,000.00. Mrs. Grunwald testified she had never filed an affidavit asking to close the estate. There was no order closing the estate found in the records.

The testimony fails to show there were ever any debts of the estate.

Appellant Ruby Holub testified she had no recollection of signing the deed. She never agreed to give her mother her inheritance. She never discussed making a gift to her mother. She first learned of the deed in 1967 when Alfred told her about it.

Alfred Grunwald testified at length. He was 27 years of age when he signed the deed. The only paper he remembered signing was brought to him by Risinger and his mother to his place at Beasley. His mother said nothing but just walked off. Risinger said, "Here is the paper you are to sign." He thought he was signing an oil lease. Risinger said, "Here is the paper for you to sign for Mama to get the oil lease on that Ganado place, a lease for oil." He wanted his mother to get the oil lease money. He signed without reading the instrument. Risinger had the paper folded under his left hand and wouldn't let him see the top. He saw his brother and two sisters had signed and he wanted his mother to have *that* money. He signed the paper, whatever it was, and now finds out it was a quitclaim deed. He thought it was an oil lease. In 1963 he learned his mother sold some of the Rosenberg lots. He then got certified copies of his grandmother's will. In 1967 when he heard his mother sold the Jackson County land, he wondered how she could do this. He then obtained a certified copy of the deed. This was the first time he had ever seen that deed. He went through the sixth grade in school. He at no time agreed to give his interest in his grandparents' estate to his mother. He only wanted his mother to get the oil money. He also testified that his father had told him a few weeks before he signed the instrument at Beasley that it would be necessary for the children to sign an instrument so his mother could get the oil money. He did not go to

Risinger's office to sign the deed. Only Risinger and his mother were with him when he signed the paper. He never discussed the paper with his father before he signed it. He didn't ask his mother anything about the paper because he was trying to do her a favor. He didn't ask Mr. Risinger what the papers were. Risinger did not refuse to let him read the papers. He didn't read the papers because he was relying on what his father said about an oil lease a number of weeks before. He didn't ask Risinger because he thought Risinger was telling him the truth. He signed the paper in the vicinity of July 29, 1941. Around April 29, 1941 they signed some papers. This instrument was shown to be a power of attorney executed by the children authorizing their mother to execute a mineral lease and to receive and receipt for any bonus, delay rentals and royalties. It was never recorded. The witness doesn't remember where he signed it. He knew he had signed a paper for an oil lease. Shortly before he got a copy of the deed in 1967 he told his mother she had better put the wills back in shape like their grandparents had them. Between 1963 and 1967 he didn't do anything about the property because he didn't know what to do. He didn't ask for the deed in 1963 though he knew his mother was selling property. He didn't talk to any lawyer until he got the copy of the deed in 1967. He knew that Mr. Risinger was dead but he didn't know how long he had been dead. (The record fails to reflect when Risinger died.) His father talked to him about having to sign some papers so his mother could get an oil lease shortly after his grandmother died in 1938, but he doesn't remember when. He learned his mother planned to sell the Ganado property shortly before it was sold. He didn't tell her not to sell but told her she better "put that will back in shape like" his grandparents "made the will."

Wilburn Grunwald, a brother of appellants, was called as a witness by appellants. He testified there was talk at the mother's home about giving his mother the right to do whatever she wanted to do with the land,

"to lease it or sell it or do whatever she wanted." He didn't know the conversation he had with Alfred. He and Alfred both said it would be a good idea to let her lease it or sell it or whatever she wanted. He went with his sister Ruby to Risinger's office when she signed the deed. Risinger explained to Ruby that it was a quitclaim deed. There was some conversation in the home prior to the execution of the deed about the deed being prepared for the children to sign that would give the land to the mother "for either leasing . . . or selling . . ." Alfred was present when the discussion occurred. In 1946 after Alfred came out of the service he said the land "was our land." Alfred stated he knew he had signed a quitclaim deed. The father at the time of trial was 82 years old and his health was not good as he had a heart condition. That is the reason he was not in court.

It appears from the record that all members of the family executed an oil and gas lease to The Texas Company in 1940. This was for a primary term of five years with an annual delay rental of $75.00.

■ Appellants first contend that the evidence shows there was no consideration for the deed and at least raises an issue as to whether a gift was intended. They say if there was no consideration and no intent to make a gift there is a resulting trust. Under the facts of this case we disagree. Where there is no consideration and the bare legal title is conveyed parol evidence is admissible to show the absence of an intent to make a gift and evidence of an intention not to convey the equitable title may be heard. Where, however, the language of the conveyance conveys not only the legal but also the equitable title, parol evidence on behalf of a grantor is not admissible to show an intent not to convey the equitable title. To admit such evidence would be to contradict the terms of the written instrument. Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; McKivett v. McKivett, 123 Tex. 298, 70 S.W.2d 694; Jackson v. Hernandez, 155 Tex. 249, 285

S.W.2d 184. The last cited case makes an exhaustive review of the earlier cases on the subject. While parol evidence was admitted without objection, effect cannot be given to it because the parol evidence rule is not a rule of evidence but one of substantive law. Here the deed quitclaimed all of the interest of appellants to the mother "as her separate property and estate." It thus conveyed both the legal and equitable title.

Appellants contend that if there be no resulting trust nevertheless the evidence raises an issue of a constructive trust because they say a confidential relationship existed between the mother and appellants by reason of their kinship and a fiduciary relationship existed because the mother was executrix of the grandmother's estate.

■ We find no fiduciary relationship in this case by reason of the mother having allegedly been executrix of the estate at the time of the conveyance. There was no pleading of such relationship. There is no evidence that there were ever any debts. More than a year had passed between the mother's qualification as independent executrix and the execution of the deed. The only duty of the executrix, there being no debts shown, would be to distribute the estate in accordance with the will. Here there is no distribution to be made because of the terms of the will. The mother, so far as the record shows, held the property as life tenant. We hold, therefore, there is no evidence to show an abuse of fidelity of an executrix.

Appellants urge that there is a confidential relation between parent and child. If this be true the mother owes a duty to the child, in any transaction between them calling for transfer to the mother of property belonging to the child, to make a full disclosure of the facts. Appellants urge the evidence raises an issue as to whether the mother made a full disclosure. We have made an extensive search for an authority holding such relation alone constitutes one of confidence.

In the case of Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985, our Supreme Court, in a case involving the question as to whether a son held title for his mother and brothers and sisters under a constructive trust by reason of his refusal to reconvey the property pursuant to an oral agreement to do so, quoted the following from American Jurisprudence:

"A parent and child . . . relationship is not intrinsically one of confidence, but under circumstances involves a confidence the abuse of which gives rise to a constructive trust in accordance with the terms of an agreement or promise of a grantee to hold in trust or to reconvey."

In the case the conveyance to the son allegedly resulted from a family arrangement made at a time when the mother and her second husband were having marital difficulties and the son agreed to reconvey. Evidence of this arrangement was held to have been erroneously excluded. The Supreme Court quoted the following from 159 A.L.R. 1007: "Fraud sufficient to raise a constructive trust from an oral promise made by the grantee to the grantor is not limited to actual fraud. . . . a breach of a confidential relationship existing between grantor and grantee frequently is considered to be such constructive fraud as will give rise to a constructive trust." The Court then said: " . . . if the purported agreement and family arrangement had been established as true, a constructive trust would have arisen by reason of the confidential relation between the parties . . . "

It seems to us the effect of the Gray case is to hold a confidential relation exists between parent and child. See also discussion in Saufley v. Jackson, 16 Tex. 579.

Since the trial court withdrew the case from the jury and rendered judgment against appellants, we must review the evidence most favorably to them. If so viewing the evidence favorable to them the evidentiary facts and the reasonable infer-

ences that may be drawn from them the reasonable mind could conclude the existence of material ultimate facts, a jury issue is presented.

■ As to Ruby we reach the conclusion there was no issue as to any misrepresentation or concealment. She just had no recollection of the transaction. Her brother Wilburn testified he went to Risinger's office when he and she signed the deed and that Risinger explained to her that it was a quitclaim deed. Ruby did not deny this. There was as to her no constructive trust as a matter of law.

■ As to Alfred we reach the conclusion there were fact issues for the jury. Under Alfred's testimony a jury could conclude that neither his mother nor anyone acting for her explained that he was being asked to sign a quitclaim deed. Also a jury could conclude that Risinger, who was clearly an agent of the mother to explain the deed and obtain its execution, represented the instrument to be only of a nature to enable the mother "to get the oil lease money." The mother never specifically denied she was present with Risinger at Beasley. She does say she had not discussed the deed with the appellant. While Alfred said he did not ask Mr. Risinger to read the instrument, he said he believed Risinger was telling him the truth about the nature of the instrument.

■ Appellants' cause was not barred by the four year statute of limitation. That statute is inapplicable to a suit to recover the equitable title by reason of a constructive or resulting trust. Binford et al. v. Snyder et al., 144 Tex. 134, 189 S.W.2d 471 (Com.App.), opinion adopted; Hall v. Miller, 147 S.W.2d 266 (CCA–San Antonio), dism'd, w. o. m.

Under the facts above recited we cannot say as a matter of law the claim is barred by laches.

Affirmed as to Ruby Grunwald Holub.

Reversed and remanded as to Alfred Grunwald.