**Affirmed and Opinion filed July 31, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00389-CV

---

## ALICE M. WOOD AND DANIEL L. WOOD, Appellants

### V.

## HSBC BANK USA, N.A. AND OCWEN LOAN SERVICING, L.L.C., Appellees

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 12-DCV-199364**

---

## O P I N I O N

This case arises out of a home-equity loan obtained by appellants Alice M. Wood and Daniel L. Wood in 2004 that encumbered their homestead with a lien. The Woods appeal the summary judgment granted in favor of appellees HSBC Bank USA, N.A. and Ocwen Loan Servicing, L.L.C. The Woods presented a single issue on appeal, which we address in two separate sub-issues:

(1)  Whether the Texas Civil Practice and Remedies Code section 16.051 four-year statute of limitations bars the Woods' claims for monetary and declaratory relief based on HSBC's and Ocwen's alleged violations of the home-equity lending protections found in article XVI, section 50(a)(6), of the Texas Constitution.

(2)  Whether the section 16.051 statute of limitations bars the Woods' claim for monetary relief based on HSBC's and Ocwen's alleged breach of the security instrument creating the home-equity lien.

Because we conclude that the Woods' claims are barred by limitations, we affirm.

## I.  FACTS AND PROCEDURAL BACKGROUND

On July 2, 2004, the Woods obtained a home-equity loan of $76,000 from Fremont Investment & Loan, secured by a first lien on their homestead located in Fresno, Fort Bend County, Texas. On March 16, 2012, the Woods sent HSBC, the current holder of the lien, a "Notice of Request to Cure." The Notice alleged that the home-equity lien violated seven provisions of article XVI, section 50(a)(6), of the Texas Constitution and demanded that HSBC cure the alleged violations. HSBC did not respond to the Woods' letter.

On July 9, 2012, the Woods sued HSBC, Ocwen, Ameriapraise, Inc., and Joel Brock seeking forfeiture of principal and interest for the constitutional violations, damages for breach of contract, damages for fraud, and a declaratory judgment that (1) the loan and accompanying home-equity lien were void, (2) HSBC failed to cure the constitutional defects, and (3) HSBC must forfeit all principal and interest paid on the loan. HSBC and Ocwen answered on August 10, 2012. HSBC filed a counterclaim on February 28, 2013, seeking a declaration that it was equitably subrogated to the rights of the prior lienholders.

On January 3, 2013, the Woods filed a motion for summary judgment on their claim that the fees exceeded three percent of the loan amount. On February 7,

2

2013, HSBC and Ocwen filed a hybrid traditional and no-evidence motion for summary judgment. In their motion, HSBC and Ocwen asserted that all of the Woods' claims were barred by limitations, that no tolling rule delayed the accrual of the Woods' claims, that the constitutional claims failed as a matter of law, that the Woods' breach of contract claim failed as a matter of law, and that no evidence supported the Woods' fraud claim.[1] On April 4, 2013, the trial court granted HSBC's traditional and no-evidence motions and denied the Woods' motion for summary judgment. The Woods then nonsuited defendants Ameriapraise, Inc. and Joel Brock, and HSBC nonsuited its counterclaim for equitable subrogation against the Woods. The Woods timely appealed.

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

We review the trial court's granting of summary judgment de novo. *Mid–Century Ins. Co. of Tex. v. Ademaj,* 243 S.W.3d 618, 621 (Tex. 2007). To prevail on a traditional motion for summary judgment, the movant must carry the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. Tex. R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When reviewing a traditional summary judgment granted in favor of the defendant, we determine whether the defendant conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997).

---

[1] The Woods have abandoned their challenge to the no-evidence summary judgment in favor of HSBC and Ocwen on the fraud claim because the Woods have not raised the fraud issue on appeal. *See* Tex. R. App. P. 38.1(f), 47.1; *Shafaii Children's Trust & Party & Reception Ctr., Inc. v. W. Am. Ins. Co.*, 417 S.W.3d 614, 622 n.6 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Martinez v. El Paso Cnty.*, 218 S.W.3d 841, 844 (Tex. App.—El Paso 2007, pet. struck) ("When reviewing a civil matter, an appellate court has no discretion to consider an issue not raised in the appellant's brief, even if the ends of justice so require."); *see also Clonts v. Johnson*, 294 S.W. 844, 846 (Tex. 1927).

A defendant moving for summary judgment on the affirmative defense of limitations . . . must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.

*KPMG Peat Marwick*, 988 S.W.2d at 748 (footnotes omitted). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 221 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable to the non-movant as true, and we must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). We will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003).

### III. DISCUSSION

**A.    The Woods' claims for monetary and declaratory relief under Texas Constitution article XVI, section 50(a)(6), are barred by the section 16.051 four-year statute of limitations.**

The Woods alleged in their petition that the home-equity lien on their residence violated article XVI, sections 50(a)(6)(B), 50(a)(6)(E), 50(a)(6)(Q)(v), and 50(a)(6)(Q)(viii), of the Texas Constitution. The Woods contend that their home-equity lien is void because of section 50(c), which states, "No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a

4

debt described by this section . . . ." Tex. Const. art. XVI, § 50(c). The Woods assert that section 50(c) renders "void but curable" any home-equity lien that does not strictly comply with a provision of section 50(a)(6). Consequently, because an action to remove a cloud on title is not subject to the four-year residual statute of limitations if a lien is void, *see Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007), the Woods argue that the trial court erred in granting summary judgment in favor of HSBC.

HSBC and Ocwen respond that the Woods' constitutional claims are barred by the four-year residual statute of limitations. Relying on the Dallas Court of Appeals' decision in *Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391 (Tex. App.—Dallas 2013, pet. denied), and the Fifth Circuit Court of Appeals' decision in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 196 (2013), they contend a lien that violates section 50(a)(6) is voidable. They further assert that section 50(a)(6)(Q)(x) allows a lender to cure a lien that would otherwise be invalid. HSBC argues that the trial court properly granted summary judgment on limitations grounds because a voidable lien is subject to limitations and the Woods did not file suit until eight years after closing the transaction.

### 1. *Home-equity liens that do not comply with section 50(a)(6) are voidable.*

The fundamental question we face today is whether a home-equity lien that violates section 50(a)(6) of the Texas Constitution is void or voidable. Two courts have recently concluded that constitutionally noncompliant homestead liens are voidable. First, like the Woods, the plaintiffs in *Priester* obtained a home-equity loan that did not comply with the constitutional requirements. 708 F.3d at 671. Five years after the transaction closed, the plaintiffs sent a letter to the defendant,

5

which had acquired the loan from the original lender, requesting cure under section 50(a)(6)(Q)(x). *Id.* The defendant took no action to cure the perceived infirmities. *Id.* The plaintiffs then sued the defendants for a declaratory judgment that the loan and lien on their home were void ab initio, that the defendants had failed to cure, and that the defendants were required to forfeit all principal and interest. *Id.* In deciding whether a statute of limitations applied to the plaintiffs' claims, the *Priester* court reasoned:

> The decision in *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342 (Tex. 2001), offers indirect support for the applicability of limitations. The court responded to a question certified by this court on the issue of cure, explaining that a lien cured under Section 50(a)(6)(Q) became valid even if it was "invalid" before the cure. *Id.* at 347. Discussing forfeiture, the court stated that "if a lien that secures such a loan is voided," the lender loses all rights to recovery. *Id.* at 346. That language suggests that the Texas Supreme Court considers liens created in violation of Section 50(a)(6) to be voidable rather than void—a "void" lien could not be "voided" by future action.

708 F.3d at 674. The *Priester* court further noted that "[b]ecause a cure provision exists in Section 50(a)(6)(Q), liens that are contrary to the requirements of § 50(a) are voidable rather than void from the start." *Id.* at 674 n.4.[2]

Second, after the *Priester* decision was issued, the Dallas Court of Appeals faced a similar question in *Williams*. In that case, the plaintiff's husband took out a loan on the couple's residence and represented himself to be an unmarried man. *Williams*, 407 S.W.3d at 392. Six years after she discovered the home-equity loan

---

[2] *Priester* effectively overruled prior federal district court cases that reached the opposite conclusion. *See Ausmus v. Deutsche Bank Trust Co. Nat'l Ass'n*, No. 3:13-CV-148, 2013 WL 3938515, at *2–*3 (S.D. Tex. Jul. 29, 2013); *see also Moran v. Ocwen Loan Servicing, L.L.C.*, 560 Fed. Appx. 277, 277 (5th Cir.) (*Priester* is controlling precedent in Fifth Circuit); *Smith v. JPMorgan Chase Bank Nat'l Ass'n*, 825 F. Supp. 2d 859, 868 (S.D. Tex. 2011) (holding that noncompliant home-equity liens are void ab initio), *adhered to on reconsideration sub nom*; *Santos v. CitiMortgage, Inc.*, No. 3:11-CV-2592-M-BK, 2012 WL 1058159, at *3 (N.D. Tex. Feb. 7, 2012) (same), *rejected in part*, 2012 WL 1065464 (N.D. Tex. Mar. 29, 2012).

and lien, the plaintiff sought declaratory judgment that the home-equity lien was void. *Id.* at 392–93, 398. The trial court granted the defendants' motion for summary judgment, which was based in part on the applicability of the four-year residual statute of limitations found in section 16.051 of the Texas Civil Practice and Remedies Code. *Id.* at 393. The plaintiff argued on appeal that the home-equity lien on her homestead was void because she did not sign the agreement granting the lien or consent to it. *Id.* at 395; *see* Tex. Const. art. XVI, § 50(a)(6)(A). Finding the *Priester* court's analysis persuasive, the *Williams* court held that the noncompliant home-equity lien was voidable. *Id.* at 397.

We too find the *Priester* court's analysis persuasive not only because of its sound reasoning, but also because its conclusion comports with Texas Supreme Court precedent on the key distinction between a void act and a voidable act, which is a party's ability—either through its own action or through the judicial process—to disaffirm, ratify, or confirm a voidable act. *See Brazzel v. Murray*, 481 S.W.2d 801, 803 (Tex. 1972) ("A void act is one entirely null within itself, not binding on either party, and which is not susceptible of ratification or confirmation. . . . A voidable act . . . is binding until disaffirmed, and . . . may be made finally valid by failure within proper time to have it annulled, or by subsequent ratification or confirmation."); *Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942); *Murchison v. White*, 54 Tex. 78, 81 (1880); *Cummings v. Powell*, 8 Tex. 80, 85 (1852); *see also Oles v. Curl*, 65 S.W.3d 129, 131 n.1 (Tex. App.—Amarillo 2001, no pet.) ("Simply put, if a supposedly void act can be validated then the act cannot actually be void."); *In re Moreno*, 4 S.W.3d 278, 280–81 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Bayoud v. Bayoud*, 797 S.W.2d 304, 309 (Tex. App.—Dallas 1990, writ denied).

7

Keeping this distinction in mind, if we were to decide that a noncompliant home-equity lien is void from the start, then the lien would not be susceptible to correction, ratification, confirmation, disaffirmation, or even cure. While this may have been the case prior to the 1997 constitutional amendment that added the section 50(a)(6)(Q)(x) cure provisions, it is not the case now. The 1997 home-equity loan amendment affords lenders the means to correct mistakes in order to validate a noncompliant home-equity lien. *Doody*, 49 S.W.3d at 346 (discussing *Collier v. Valley Bldg. & Loan Ass'n*, 62 S.W.2d 82, 84 (Tex. Comm'n App. 1933, holding approved)). The section 50(a)(6)(Q)(x) cure provisions place noncompliant home-equity liens on the voidable side of the void-voidable scale.[3]

Despite the Woods' argument that a plain reading of section 50(c) necessitates finding a constitutionally noncompliant lien void, our conclusion is consistent with the rules governing interpretation of the Texas Constitution:

> When interpreting our state constitution, we rely heavily on its literal text and must give effect to its plain language. We strive to give constitutional provisions the effect their makers and adopters

---

[3] The Woods cite *Collier*, in support of the proposition that the *Doody* court created a new "void but curable" status for section 50(a)(6) home-equity liens. *Collier* stands for the proposition that an invalid lien cannot be ratified unless the authority to ratify it exists under our Constitution or statutes. *Collier v. Valley Bldg. & Loan Ass'n*, 62 S.W.2d 82, 84 (Tex. Comm'n App. 1933, holding approved). Referring to *Collier*, the *Doody* court made clear that the 1997 home-equity loan amendment affords lenders the authority to ratify an invalid lien. *Doody*, 49 S.W.3d at 346. The *Doody* court's statement supports our conclusion that constitutionally noncompliant liens are voidable.

The Woods' further reliance on *York v. State*, 373 S.W.3d 32 (Tex. 2012), in support of their "void but curable" argument is also misplaced. The *York* court held that a judgment that violates a bankruptcy automatic stay is void unless a federal bankruptcy court modifies the stay. *Id.* at 40. The Woods' situation is distinguishable because the lender in a home-equity transaction has the ability under our Constitution to cure the noncompliant lien without the involvement of the federal judiciary or any other third party. Furthermore, the Texas Supreme Court has noted that the rationale for classifying judgments in violation of an automatic stay as void was that bankruptcy law vests "exclusive jurisdiction" in the bankruptcy courts. *See Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 923 (Tex. 2011) (citing *Kalb v. Feuerstein*, 308 U.S. 433 (1940)). That rationale does not apply to the present case.

8

intended. We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other. And we strive to avoid a construction that renders any provision meaningless or inoperative.

*Doody*, 49 S.W.3d at 344 (citations omitted). In adhering to these core principles, the *Doody* court stated:

[T]he cure provision in section 50(a)(6)(Q)(x) applies to all the lender's obligations under the 'extension of credit' including section 50(c)'s requirements that to be valid a homestead must secure a debt described by this section.

*Id.* at 345. Accepting the Woods' position would require us to read section 50(c) in isolation and in contravention of Texas Supreme Court precedent, which we decline to do.

Accordingly, we hold that because a cure provision exists in the Texas Constitution, homestead liens that do not comply with the constitutional requirements are voidable. *Priester*, 708 F.3d at 674; *Williams*, 407 S.W.3d at 396–97.

> **2.** ***The four-year statute of limitations of Texas Civil Practice and Remedies Code section 16.051 applies to the Woods' constitutional claims.***

Having determined that noncompliant home-equity liens are voidable, and because such liens are subject to limitations, we must decide which statute of limitations applies to the Woods' constitutional claims. "Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008). Section 50(a)(6) does not contain an express limitations period. *Williams*, 407 S.W.3d at 394. Therefore, the Woods' causes of action based on HSBC and Ocwen's alleged

9

violations of section 50(a)(6) are subject to the section 16.051 four-year residual statute of limitations.

Anticipating the possibility that section 16.051 would apply to their constitutional claims, the Woods assert that section 16.051 does not apply to their declaratory judgment action to cancel HSBC's lien because it constitutes an action for the recovery of real property. An action for the recovery of real property is one that would support a trespass to try title suit without first invoking the equitable powers of the court to cancel a deed. *Miles v. Martin*, 321 S.W.2d 62, 69 (Tex. 1959); *Carr v. Weiss*, 984 S.W.2d 753, 762 (Tex. App.—Amarillo 1999, pet. denied); *see also Neill v. Pure Oil Co.*, 101 S.W.2d 402, 404 (Tex. Civ. App.— Dallas 1937, writ ref'd); *Landram v. Robertson*, 195 S.W.2d 170, 175 (Tex. Civ. App.—San Antonio 1946, writ ref'd n.r.e.). A trespass to try title suit is "the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001(a) (West 2000). It is generally used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). A declaratory judgment action, on the other hand, provides an efficient procedural method for seeking a declaration of rights regarding the construction or validity of deeds by those whose rights are affected by such instruments. *Jordan v. Bustamante*, 158 S.W.3d 29, 35 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Initially, we note that the Woods' claim for forfeiture of principal and interest is an action to recover money damages. As such, it is not an action for the recovery of real property. Nor is the Woods' declaratory judgment action to void the home-equity lien—which does not implicate any of the issues resolved by a trespass to try title suit—an action for the recovery of real property. *Cf. Mortg. Elec. Registration Sys., Inc. v. Groves*, No. 14-10-00090-CV, 2011 WL 1364070,

at *4 (Tex. App.—Houston [14th Dist.] Apr. 12, 2011, pet. denied) (mem. op.) (where defendant did not dispute plaintiff's title to property and plaintiff did not dispute defendant's ownership of deed of trust, plaintiff's claim that deed of trust was invalid did not implicate any issues resolved by trespass to try title suit).

Citing the general principle that the legal and equitable estates in real property are severed when a mortgagor executes a deed of trust, *see Flag-Redfern Oil Co. v. Humble Expl. Co., Inc.*, 744 S.W.2d 6, 8 (Tex. 1987), the Woods further contend that their suit to invalidate the home-equity lien is an action to recover "equitable title." Therefore, it is an action to recover real property. The Woods then cite two cases, *MacDonald v. Follett*, 180 S.W.2d 334 (Tex. 1944), and *In re Lemons*, 281 S.W.3d 643 (Tex. App.—Tyler 2009, no pet.), for the proposition that "the Supreme Court has long held that suits for equitable title are not subject to the 4-year residual statute of limitations."

We reject the Woods' argument. In *MacDonald*, the plaintiff brought an action in trespass to try title seeking to impose a constructive trust on the legal title to real property acquired by the defendant through an alleged breach of fiduciary duty. 180 S.W.2d at 335–36. The Texas Supreme Court held that if the plaintiff could successfully establish a relationship of trust and confidence with the defendant, then the four-year statute of limitations would not apply to the plaintiff's suit because it would be an action to recover real property. *Id.* at 338. In *Lemons*, the plaintiff sued to impose a constructive trust on the legal title to real property purchased by the defendant with funds that were removed from the plaintiff's bank account without authority. 281 S.W.3d at 645. The defendant moved to transfer venue under section 15.011 of the Texas Civil Practice and Remedies Code. *Id.* at 646. Section 15.011 is a mandatory venue provision stating that "[a]ctions for recovery of real property . . . shall be brought in the county in

11

which all or a part of the property is located." Tex. Civ. Prac. & Rem. Code Ann. § 15.011 (West 2002); *Lemons*, 281 S.W.3d at 646. The Tyler Court of Appeals held that section 15.011 applied to the plaintiff's claim because "a suit to impose a constructive trust on real property is a suit for the recovery of real property." *Lemons*, 281 S.W.3d at 647.

Based on the context provided by the facts of *MacDonald* and *Lemons*, the more accurate proposition is that suits for equitable title *by reason of a constructive trust* are not subject to the four-year residual statute of limitations because a beneficiary's interest under a constructive trust will support an action in trespass to try title. *See Binford v. Snyder*, 189 S.W.2d 471, 476 (Tex. 1945); *Grunwald v. Grunwald*, 487 S.W.2d 240, 245 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.); *Gates v. Coquat*, 210 S.W.2d 614, 615 (Tex. Civ. App.—San Antonio 1948, no writ).

Here, the Woods are not attempting to impose a constructive trust on the home-equity lien and do not allege that HSBC has acquired legal title through wrongdoing. To the contrary, the Woods have merely asserted a cause of action to cancel their home-equity lien, which will not support an action in trespass to try title and which requires the equitable powers of the court to determine. *Cf. Neill*, 101 S.W.2d at 403 ("[P]laintiffs' action [to cancel the voidable deeds] rests upon equitable title, assertion of which requires the aid of a court of equity to determine, thus the action is not one to recover real estate but one to remove the impediment to such title, and is barred by the [article 5529, now section 16.051] statute of limitation . . . ."); *Johnson v. Wood*, 157 S.W.2d 146, 148 (Tex. 1941) (a cause of action to cancel a conveyance will not support an action in trespass to try title); *see also Groves*, 2011 WL 1364070, at *4 (declaratory judgment action to cancel deed of trust did not implicate issues resolved by trespass to try title suit).

12

Because the Woods' declaratory judgment action to cancel their home-equity lien would not support a trespass to try title action and requires the equitable powers of the court to cancel their lien, their declaratory judgment action to cancel the home-equity lien is not an action to recover real property.

We conclude that the section 16.051 four-year statute of limitations applies to the Woods' constitutional claims.

### 3. The Woods' constitutional claims accrued on July 2, 2004, the date the home-equity transaction closed.

We now address whether HSBC and Ocwen conclusively proved when the Woods' cause of action accrued. Generally, a cause of action accrues when a wrongful act causes a legal injury. *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011); *Williams*, 407 S.W.3d at 398. In cases involving a challenge to the validity of a home-equity lien on constitutional grounds, the legal injury occurs on the date the transaction closes. *Priester*, 708 F.3d at 676; *Williams*, 407 S.W.3d at 398; *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App.—Dallas 2008, no pet.); *Schanzle v. JPMC Specialty Mortg. LLC*, No. 03-09-00639-CV, 2011 WL 832170, at *4 (Tex. App.—Austin Mar. 11, 2011, no pet.) (mem. op.). Here, the Woods are challenging the validity of the home-equity lien on constitutional grounds. Therefore, the Woods' constitutional claims accrued on July 2, 2004, the date the Woods' home-equity loan closed.

In reaching this conclusion, we reject the Woods' alternative arguments for a later accrual date. The Woods initially rely on *Dessommes v. Dessommes*, 543 S.W.2d 165 (Tex. Civ. App.—Texarkana 1976, writ ref'd n.r.e.), in support of their position that no controversy arose with respect to their declaratory judgment action until HSBC failed to cure. Essentially, the Woods argue that, for purposes of determining the accrual date, their legal injury did not occur until the sixty-day

period for cure expired. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x). However, *Dessommes* simply restates the general principle that a statute of limitations begins to run when facts come into existence authorizing a party to seek a judicial remedy, i.e., when the legal injury occurs. 543 S.W.2d at 169 (citing *Williams v. Pure Oil Co.*, 78 S.W.2d 929, 931 (Tex. 1935)); *see also Knott*, 128 S.W.3d at 221.

We have already held that the legal injury in this case occurred when the transaction closed on July 2, 2004. The facts that would have alerted the Woods to potential constitutional violations—e.g., fees exceeding three percent of the loan amount—existed when the transaction closed, as did their right to seek a judicial remedy for those violations. Furthermore, nothing in the Texas Constitution prevented the Woods from initiating their declaratory judgment action as soon as the transaction closed. *See Priester*, 708 F.3d at 675 n.6 ("[T]here is nothing in the Texas Constitution that suggests that the borrower must seek cure before filing suit.").

The Woods next argue that the statute of limitations was tolled because of HSBC's "continuing and ongoing violations" of the Texas Constitution. The Woods did not explain or cite any legal authority in support of their contention. This issue is therefore inadequately briefed. *See* Tex. R. App. P. 38.1(i); *In re S.A.H.*, 420 S.W.3d 911, 929 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because we conclude that the Woods have waived error on this particular argument, we decline to address it.[4]

---

[4] The Woods pleaded two alternative tolling theories in their second amended petition— the discovery rule and equitable tolling. Both theories were addressed in HSBC and Ocwen's motion for summary judgment and in the Woods' response to HSBC and Ocwen's motion for summary judgment. The Woods did not raise these theories on appeal and have therefore abandoned them. *See* Tex. R. App. P. 38.1(f), 47.1; *Shafaii Children's Trust*, 417 S.W.3d at 622 n.6; *Martinez*, 218 S.W.3d at 844 ("When reviewing a civil matter, an appellate court has no discretion to consider an issue not raised in the appellant's brief, even if the ends of justice so

In sum, because a cure provision exists in the Texas Constitution, homestead liens that do not comply with the constitutional requirements are voidable. The section 16.051 four-year residual statute of limitations applies to the Woods' constitutional claims, and their constitutional claims are not actions for the recovery of real property. The Woods' constitutional claims accrued when the home-equity transaction closed on July 2, 2004. The Woods had until July 2, 2008, to file their petition. The Woods did not file their original petition until July 9, 2012.

With regard to the Woods' constitutional claims, we conclude that the trial court did not err in granting HSBC's motion for summary judgment on limitations grounds. The Woods' first sub-issue is overruled.[5]

## B. The Woods' breach-of-contract claim was barred by the section 16.051 four-year statute of limitations.

The Woods alleged in their second amended petition that HSBC and Ocwen breached paragraph 13 of the security agreement that created the home-equity lien by charging fees exceeding three percent of the loan amount, in violation of section

require."); *see also Clonts*, 294 S.W. at 846.

[5] In an additional argument against the applicability of a statute of limitations to their constitutional claims, the Woods characterize their declaratory judgment action as a defense to foreclosure. According to the Woods, because defenses are not governed by the statutes of limitations, their declaratory judgment action is not barred by limitations. We have indicated in the foreclosure context that a lender's failure to comply with the constitutional requirements is in the nature of an affirmative defense. *Wilson v. Aames Capital Corp.*, No. 14-06-00524-CV, 2007 WL 3072054, at *1 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.). However, potential defendants like the Woods cannot "use a declaratory judgment to prematurely adjudicate defenses to liability that may not yet exist." *Transcon. Realty Investors, Inc. v. Orix Capital Mkts., LLC*, 353 S.W.3d 241, 245 (Tex. App.—Dallas 2011, pet. denied) (citing *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998), for the proposition that under the federal constitution, a party cannot use a declaratory judgment to obtain an advance ruling on an affirmative defense). Nothing in the record before us indicates that the Woods were actually faced with foreclosure; thus, their liability may not yet exist, and because we are prohibited from issuing advisory opinions, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993), we decline to treat the Woods' declaratory judgment action as a defense to foreclosure.

15

50(a)(6)(E) of the Texas Constitution.[6] The Woods contend on appeal that because notice is a prerequisite to filing suit under the security instrument,[7] their cause of action for breach of contract did not accrue until March 16, 2012, the date they sent HSBC notice of the alleged constitutional violations. HSBC and Ocwen respond that the Woods' breach-of-contract claim is barred by limitations because the Woods filed suit more than four years after their claim accrued on July 2, 2004, when the transaction closed.

The limitations period for a breach-of-contract cause of action is four years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). A claim for breach of contract accrues when the contract is breached. *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006); *Stine*, 80 S.W.3d at 592. Generally, when demand is a condition precedent to the right to sue, the statute of limitations does not begin to run until demand is made, unless the demand is waived or unreasonably delayed. *Gabriel v. Alhabbal*, 618 S.W.2d 894, 896 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

> Where demand is a prerequisite to a right of action, the injured party must make the demand within a reasonable time after it may lawfully be made. . . . The reasonableness of the delay is normally a fact question, but in the absence of mitigating circumstances, the law will ordinarily consider a reasonable time as being coincident with the

---

[6] Paragraph 13 of the security agreement reads, in pertinent part: "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." The term "Applicable Law" is defined as "all controlling applicable . . . state and local statutes . . . ."

[7] Paragraph 19 of the security agreement states, in pertinent part:

> Neither Borrower nor Lender may commence . . . any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

16

running of the statute, and an action will be barred if a demand is not made within that period.

*Barnes v. LPP Mortg., Ltd.*, 358 S.W.3d 301, 306 (Tex. App.—Dallas 2011, pet. denied) (quoting *Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 671 (Tex. App.—Texarkana 1996, writ denied)).

Assuming, for the sake of argument, that HSBC did in fact breach the security agreement by charging fees in excess of three percent of the loan amount, the breach occurred on the date the excessive fees were charged. The Woods referred to certain itemized charges in the HUD-1 settlement statement as evidence that HSBC assessed excessive fees.[8] The HUD-1 identified the settlement date as July 2, 2004, which coincides with the closing date of the transaction. Therefore, the alleged excessive fees were charged, and the Woods' breach-of-contract claim accrued, on July 2, 2004. Absent mitigating circumstances, the Woods had until July 2, 2008, to demand cure and file their breach-of-contract cause of action. The Woods did not demand cure until March 16, 2012, and they did not file their original petition until July 9, 2012. The Woods did not allege in their live petition any mitigating circumstances to justify waiting nearly eight years to demand cure.

Therefore, with regard to the Woods' breach-of-contract claim, we conclude that the trial court did not err in granting HSBC and Ocwen's motion for summary judgment on limitations grounds. The Woods' second sub-issue is overruled.

## IV.   CONCLUSION

The trial court did not err by granting summary judgment in favor of HSBC and Ocwen on limitations grounds. We overrule both of the Woods' sub-issues on

---

[8] For purposes of the HUD-1, "settlement means the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called 'closing' or 'escrow' in different jurisdictions." 24 C.F.R. § 3500.2(b) (2014).

appeal and affirm the trial court's judgment.

/s/    Marc W. Brown
Justice

Panel consists of Justices Boyce, Christopher, and Brown.