

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00048-CV

_____

IN RE: THE ESTATE OF CAROLYN C. HARDESTY, DECEASED

On Appeal from the Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2010-PR01500-2-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

This is the appeal by Kenneth Hardesty (Hardesty) of his lawsuit against PrimeLending, a PlainsCapital Company (PrimeLending), and CitiMortgage, Inc. (CitiMortgage), for declaratory relief and fraud in connection with the foreclosure of a $500,000.00 home equity loan secured by real property owned by his mother, Carolyn C. Hardesty, deceased. We affirm the trial court's judgment because, even though Hardesty had standing to bring the declaratory judgment action, (1) the probate court had jurisdiction to enter the foreclosure order and adjudicate the constitutional claims that were raised, (2) Hardesty's claim that the lien is invalid is barred by limitations, (3) the statute of frauds bars Hardesty's fraud claim against CitiMortgage, and (4) the trial court acted within its discretion to award attorney fees to CitiMortgage.

I.      **Factual and Procedural Background**

In July 2004, Carolyn took out a $500,000.00 loan in favor of PrimeLending secured by a home equity lien, classified as an extension of credit as defined by Article XVI, Section 50(a)(6)(A) of the Texas Constitution. The loan was secured by a deed of trust on Carolyn's home, located at 914 Parkview Lane in Southlake, Tarrant County, Texas (the Property).[1] At the time of closing, Carolyn (a single woman who occupied the Property as her homestead) executed a sworn fair market value agreement, indicating the property securing the loan was valued at $625,000.00. Although Hardesty assisted Carolyn in acquiring the home equity loan, he was not

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

a party to the underlying loan transaction with PrimeLending.[2] CitiMortgage took over servicing of the loan effective October 2005.[3]

In November 2007, Carolyn passed away, devising the Property to Hardesty in her will. Following Carolyn's death, CitiMortgage and Hardesty entered into an alleged oral agreement whereby CitiMortgage would pay the ad valorem taxes assessed against the Property if Hardesty would pay the monthly mortgage payments. This agreement would continue until Hardesty "could get title to the Property." Ten days after Hardesty obtained title, he was to repay CitiMortgage for the tax payments it had paid on the Property. Thereafter, Hardesty paid the monthly mortgage payments on the Property for more than two years after Carolyn's death. CitiMortgage paid taxes on the Property for the years 2007 through 2011.

In July 2010, CitiMortgage initiated a foreclosure proceeding by filing an application for foreclosure of real property pursuant to Section 306(e)(3) of the Texas Probate Code.[4] The Estate allowed the claim in full as a valid preferred debt and lien against the Property, to be paid according to the terms and conditions of the loan agreement. After a hearing, the trial court issued an order in December 2010 authorizing foreclosure of the lien. CitiMortgage posted a

---

[2]Hardesty is not a co-borrower or a guarantor of the note. Likewise, he is not a grantor of the Deed of Trust and did not pledge collateral to secure the note.

[3]The original note endorsed in blank by PrimeLending was delivered to CitiMortgage, and the lien evidenced by the deed of trust was assigned to CitiMortgage in April 2010.

[4]Beginning in 2009 and finally concluding effective January 1, 2014, the Texas Legislature, as part of its topic-by-topic statutory revision program, repealed the Texas Probate Code and re-codified its provisions in the Texas Estates Code. The new codification is "without substantive change," and its purpose is to make the law "more accessible and understandable." *See* TEX. ESTATES CODE ANN. § 21.001 (West 2014). Because the governing law at the time of the occurrences mentioned here and at the time of trial was prior to the repeal and recodification of the Texas Probate Code, we cite the provisions of the Texas Probate Code and include, at the conclusion of this opinion, a Table of Citations which provides the session law citations for the repealed Probate Code sections as well as a cross-reference to the re-codified Estates Code citations.

notice of trustee's sale for February 1, 2011.[5]  In January 2011, Hardesty notified PrimeLending and CitiMortgage in writing that he believed the home equity loan and deed of trust were violative of the Texas Constitution and invited them to cure the defect within the time allowed by law.  No action was taken to cure the alleged defect.

On the date of the scheduled foreclosure sale, Hardesty obtained a temporary restraining order (TRO) in a District Court of Tarrant County to prevent CitiMortgage from foreclosing on the Property.  The TRO was issued in conjunction with a petition filed by Hardesty for a declaratory judgment that the home equity loan violated Article XVI, Section 50(a)(6)(B) of the Texas Constitution because the loan amount exceeded eighty percent of the value of the home. In making this allegation, Hardesty relied on the Tarrant County Appraisal District's records, which indicated that the Property carried an appraised market value on its rolls of $474,500.00 from 2003 through 2006.  Hardesty claimed that the $500.000.00 loan thus exceeded the constitutionally-prescribed eighty percent loan-to-value ratio maximum.  Hardesty further alleged that notice of this defect was provided to PrimeLending and CitiMortgage in accord with Article XVI, Section 50(a)(6)(Q)(x) of the Texas Constitution.  Hardesty's petition requested judgment declaring the lien to be void and (in the event the defendants failed to correct this defect within sixty days of such notice) sought forfeiture of all principal and interest under the note.

---

[5]Carolyn executed an escrow waiver agreement, providing that as long as there was no delinquency or default, the requirement for an escrow account for taxes and insurance was waived.  The escrow waiver further provided that a failure to timely pay taxes constituted an "'event of default.'"

PrimeLending filed a general denial answer, further affirmatively pleading that Hardesty lacked standing to bring the declaratory judgment action and that his claims were barred the applicable statute of limitations.[6] CitiMortgage alleged that Hardesty's claims that were based on the allegation that the loan and its securing lien were made in violation of the Texas Constitution were barred by limitations. It further alleged that Hardesty was barred from asserting the alleged constitutional violation, stating that it was entitled to conclusively rely on the written sworn acknowledgement of the Property's fair market value as signed by Carolyn at the time of the institution of the home equity loan in accord with Article XVI, Section 50(h) of the Texas Constitution. Finally, CitiMortgage contended that Hardesty's fraud claim based on CitiMortgage's alleged breach of its oral agreement to pay taxes on the Property and to forbear from foreclosing was barred by the statute of frauds, res judicata, and/or collateral estoppel. In an amended petition, Hardesty alleged that both PrimeLending and CitiMortgage were guilty of fraudulently inducing Carolyn to sign the note by falsely representing the Property's fair market value to be greater than it actually was.

In February 2011, CitiMortgage filed a motion to transfer, asking the probate court to transfer Hardesty's declaratory judgment action from the district court to the probate court where Carolyn's estate was pending. This motion invoked Section 4F of the Probate Code, which granted exclusive jurisdiction to the statutory probate court of a cause of action related to the probate proceeding, as its authority. *See* TEX. PROB. CODE ANN. § 4F.

---

[6]PrimeLending also affirmatively pled that Hardesty's claims were barred by the statute of frauds, but did not pursue this defense in summary judgment proceedings.

In response, Hardesty filed an anti-suit injunction in the district court, asking the district court to enjoin CitiMortgage from seeking a transfer of the district court case to Tarrant County Probate Court No. 2. Hardesty claimed the probate court had no jurisdiction for two reasons: (1) the district court case involved the constitutionality of CitiMortgage's lien and issues regarding the constitutionality of a lien cannot be determined by a statutory probate court and (2) a foreclosure application for a home equity loan must (according to the 2010 version of Rule 736 of the Texas Rules of Civil Procedure which was then in force and effect) be filed in the district court. *See* TEX. R. CIV. P. 736, 61 Tex. B.J. 226 (1998, amended 2000).

The district court denied Hardesty's anti-suit injunction. The probate court thereafter granted CitiMortgage's motion to transfer the district court case to the Probate Court No. 2 of Tarrant County.

The Probate Code specifically provided that a statutory probate court possessed the power to transfer to itself a cause of action "related to" a probate proceeding pending in the probate court. TEX. PROB. CODE ANN. § 5B(a). In addition, a probate court was permitted under the Probate Code to "exercise pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy." TEX. PROB. CODE ANN. § 4A(b). Accordingly, the probate court possessed the power to transfer the pending district court case to itself.

Once it was settled between the two courts that the matter would be tried in the probate court, CitiMortgage and PrimeLending began their offensive. PrimeLending led the attack with its motion for partial summary judgment, which primarily focused on its allegation that Hardesty lacked standing to bring suit on behalf of Carolyn's estate. While PrimeLending did not contest

6

Hardesty's status as an heir to Carolyn's estate and further acknowledged Hardesty's ownership of the Property, it nevertheless contended that Hardesty lacked standing to sue on behalf of the estate, maintaining that the personal representative of the estate had the exclusive right to bring such suits. PrimeLending further attacked Hardesty's standing to contest the validity of the loan on the basis that Hardesty was a stranger to the loan transaction. PrimeLending argued that in the absence of a survival claim, Hardesty had no relationship with the proceedings and had no justiciable interest in its outcome.

A secondary argument for summary judgment included the statute of limitations, which PrimeLending claimed had run on each of Hardesty's causes of action. It claimed that the statute of limitations for a declaratory judgment action—in regard to the constitutionality of the lien—is four years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008). Moreover, the statute of limitations applicable to an action for fraud is four years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (West 2002). PrimeLending argued that these limitations periods expired well before Hardesty filed his action, as the loan closing date was July 23, 2004. PrimeLending also argued Hardesty knew of the alleged misrepresentations regarding the loan-to-value ratio at the time of closing. Hardesty's petition was not filed until February 1, 2011.

Hardesty responded, claiming that as the rightful owner of the Property and holder of the deed, he was entitled to all of the rights and obligations associated with Carolyn's relationship to the Property, and thus had a justiciable interest in the Property.[7] With respect to his opponents' claim that his challenge was barred by the statute of frauds, Hardesty claimed that because his

---

[7]The executor of Carolyn's estate deeded the Property to Hardesty on February 14, 2012.

pleading seeks to quiet title and clearly alleges the lien is void, neither four-year statute of limitations bars his claim. Without providing a specific basis for its ruling, the trial court granted PrimeLending's motion for partial summary judgment.

Like PrimeLending, CitiMortgage based its motion for summary judgment—filed on February 3, 2012—on the four-year-limitations bar to Hardesty's claim. Unlike PrimeLending, CitiMortgage claimed entitlement to summary judgment on Hardesty's constitutional claim because the sworn fair market value acknowledgment was conclusive evidence of the value of the Property at the time of the loan; accordingly, there was no violation of Article XVI, Section 50(a)(6)(B). CitiMortgage claimed entitlement to summary judgment on Hardesty's claim of an alleged oral agreement, taking the position that Hardesty's claim was barred by the statute of frauds, res judicata, and/or collateral estoppel.

Hardesty responded to CitiMortgage's motion for summary judgment, claiming that neither of the four-year statutes of limitations was applicable because his claim involved an action for recovery of real property. Further, Hardesty alleged limitations could not bar his claim because the lien was void. Without providing a specific basis for its ruling, the trial court granted CitiMortgage's motion for summary judgment.

In March 2012, CitiMortgage filed its second motion for summary judgment. This motion sought judgment on Hardesty's newly pled claims of fraud in the inducement, unjust enrichment, and promissory estoppel. CitiMortgage argued that because it had dealings with neither Carolyn nor Hardesty with respect to the loan until October 2005, it could not have made any misrepresentation which induced Carolyn into signing the lien documents. It further claimed

8

that the unjust enrichment and promissory estoppel claims were barred by res judicata and collateral estoppel, as well as by the statute of frauds.

The trial court granted CitiMortgage's second motion for summary judgment in part and denied it in part. The court ordered that Hardesty take nothing by way of his fraud in the inducement claim, but it denied CitiMortgage's request for summary judgment as to Hardesty's claims for unjust enrichment and promissory estoppel. The court also granted CitiMortgage's conditional motion for severance, severing Hardesty's unjust enrichment and promissory estoppel claims against CitiMortgage.[8]

The trial court entered its final judgment June 9, 2013, incorporating its previous summary judgment rulings within that judgment. In addition, the final judgment awarded attorney fees to CitiMortgage in the sum of $42,379.65, which award Hardesty contests on appeal.[9]

## II. Standard of Review

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review de novo the grant or denial of a motion for summary judgment "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v. City of Longview*,

---

[8]The trial court evidently pronounced its ruling on this summary judgment motion from the bench on April 25, 2012, and included its ruling in the final judgment.

[9]Hardesty attacks the trial court's transfer order as well as its summary judgment rulings, all of which are incorporated into the final judgment. *See Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972) (interlocutory orders are merged into final judgment and thus become final for purposes of appeal regardless of whether interlocutory order is specifically named within final judgment).

9

270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Fielding*, 289 S.W.3d at 848).

In our review, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam). Where, as here, the summary judgment order does not specify the ground or grounds upon which the trial court relied, "summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 658 (Tex. App.—Texarkana 2013, no pet.); *see Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

## III.    Analysis

### A.      Hardesty Had Standing to Pursue Declaratory Judgment Action

Standing is a constitutional prerequisite to maintaining suit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The lack of standing deprives a court of subject-matter jurisdiction to hear a case. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). A party generally has standing to bring suit where a controversy exists between the parties that "'will be actually determined by the judicial declaration sought.'" *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)).

PrimeLending argues that no privity of contract existed between it and Hardesty because Hardesty was a signatory of neither the note, nor the deed of trust, nor any of the other loan documents related to Carolyn's home equity loan with PrimeLending. It claims that Hardesty's

10

only legal connection to this matter derives from his status as an heir to Carolyn's estate and cites caselaw that stands for the proposition that an heir does not have standing to sue on behalf of the estate, as such right belongs exclusively to the estate's personal representative. *See Pratho v. Zapata*, 157 S.W.3d 832, 839 (Tex. App.—Fort Worth 2005, no pet.). And, "[a]s a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust." *Goswami v. Metro Savs. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988).

An exception to this general rule exists when a third party has a legal or equitable interest in the property that will be affected by the sale. *Id.* In that instance, the third party has standing to challenge the sale to the extent that his rights will be affected by the sale. *Id.* "Modern cases have expanded the class of parties with standing to dispute the validity of the foreclosure sale by adopting a more liberal attitude toward this privity requirement. . . . Under the current approach, the [plaintiff] need only have established a property interest in the deed of trust realty to impute a flaw" in the sale. *Long v. NCNB–Tex. Nat'l Bank*, 882 S.W.2d 861, 867 (Tex. App.—Corpus Christi 1994, no writ).

Here, Hardesty acquired the estate's interest in the Property by warranty deed from Rick Hale in his capacity as the executor of the Estate of Carolyn C. Hardesty, Deceased, on February 14, 2012. A copy of this warranty deed was attached to Hardesty's response to PrimeLending's motion for partial summary judgment. Additionally, Hardesty satisfied the monthly installments on the note for over two years, in a total approximate amount of $100,000.00. Although Hardesty does not challenge the validity of a foreclosure sale, he does

11

challenge the validity of the order authorizing that foreclosure. Hardesty's interest in the Property is sufficient to challenge the validity of the order.[10]

**B.      The Probate Court Had Jurisdiction to Enter the Foreclosure Order and to Adjudicate the Constitutional Claims**

The basis of Hardesty's claim that the trial court lacked subject-matter jurisdiction is twofold. First, Hardesty argues the probate court lacked proper jurisdiction to issue the foreclosure order under Rule 736. Second, Hardesty argues that the probate court lacked jurisdiction to "adjudicate the underlying constitutional issues." We review de novo a challenge to a trial court's subject-matter jurisdiction. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

**1.      Jurisdiction to Enter the Foreclosure Order**

Article XVI, Section 50 of the Texas Constitution protects a homestead from forced sale to satisfy any debts except for certain enumerated types of debt. These enumerated types of debt historically included only debts incurred for the purchase of that property, for improvements to it, or for taxes. In 2001, this historical constraint was relaxed to permit more loans secured by homesteads, including some loans made when an extension of credit "is secured by a lien that may be foreclosed upon only by a court order." TEX. CONST. art. XVI, § 50(a)(6)(D); *see In re Dominguez*, 416 S.W.3d 700, 705 (Tex. App.—El Paso 2013, orig. proceeding). Although this case involves a court order authorizing foreclosure, Hardesty contends that order is not valid because it was purportedly issued pursuant to Rule 736 of the Texas Rules of Civil Procedure.

---

[10]Hardesty also relies on the estate's "Assignment of Causes of Action" to him. We do not consider this assignment, as it was executed on February 29, 2012, after the summary judgment hearing on February 23, 2012.

12

TEX. R. CIV. P. 736. He further contends that in 2010, only a district court was authorized to issue such an order.

Hardesty correctly notes that the version of Rule 736 in effect at the time the application was filed required that "a verified application" should be filed "in the district court in any county where all or any part of the real property encumbered by the lien sought to be foreclosed . . . is located." TEX. R. CIV. P. 736.[11] A Rule 736 foreclosure proceeding is an expedited type; no discovery is permitted and if no response is filed within the allotted time and if the application complies with Rule 736(1), the court must grant the application without further notice or hearing. TEX. R. CIV. P. 736(4)–(6).

Appellees respond that the application seeking foreclosure was not filed pursuant to Rule 736 but was filed, rather, pursuant to Section 306(e)(3) of the Texas Probate Code. TEX. PROB. CODE ANN. § 306(e)(3). They further contend that an expedited foreclosure pursuant to Rule 736 was not the sole means of foreclosure required in this circumstance, maintaining that such a proceeding was but one of the available options for obtaining the required constitutional "court order," and it was not the option the holders of the lien elected to pursue.[12] In light of these

---

[11]*See* TEX. R. CIV. P. 736, 61 Tex. B.J. 226 (1998, amended 2000). Rule 736 has since been rewritten and now provides that application for an expedited order allowing foreclosure under Rule 735 "must be filed in a county where all or part of the real property encumbered by the loan agreement, contract, or lien sought to be foreclosed is located or in a probate court with jurisdiction over proceedings involving the property." TEX. R. CIV. P. 736.1.

[12]The version of Rule 735 in effect at the time the application was filed provided,

> A party seeking to foreclose a lien created under TEX. CONST. art. XVI, § 50(a)(6), for a home equity loan, . . . may file: (1) a suit seeking judicial foreclosure; (2) a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and TEX. PROP. CODE ANN. § 51.002; or (3) an application under Rule 736 for an order allowing foreclosure.

contentions, we examine the proceedings in the probate court to determine whether the court conducted an expedited foreclosure proceeding pursuant to Rule 736 or whether (as maintained by the lienholder) the foreclosure proceedings were conducted in accord with Section 306 of the Probate Code. *See* TEX. PROB. CODE ANN. § 306.

After Carolyn's November 2007 death, Hardesty caused her will to be admitted to probate. Following the July 9, 2010, appointment of a temporary administrator, CitiMortgage filed its authenticated secured claim with that temporary administrator July 14, 2010. The temporary administrator issued a memorandum of allowance, allowing "the claim in full as a valid preferred debt and lien against the Property securing the indebtedness identified in Mortgagee's claim, to be paid according to the terms and conditions of the Loan Agreement" on July 14, 2010. The language of the claim allowance tracks the language of Section 306(a)(2) of the Probate Code. *See* TEX. PROB. CODE ANN. § 306(a)(2).[13]

The following day, CitiMortgage filed its "Application for Foreclosure of Real Property Pursuant to § 306(e)(3)." The application includes a synopsis, which indicates that "Claimholder requests order authorizing foreclosure of real property and improvements of the Estate pursuant to TEX. PROB. CODE § 306(e)(3)." Section 306(e)(3) is quoted in the application and is

---

TEX. R. CIV. P. 735, 61 Tex. B.J. 226 (1998, amended 2000).

[13]Section 306(a)(2) of the Probate Code provides that

> [w]hen a secured claim for money against an estate is presented, the claimant shall specify . . . [w]hether it is desired to have the claim allowed, approved, and fixed as a preferred debt and lien against the specific property securing the indebtedness and paid according to the terms of the contract which secured the lien, in which event it shall be so allowed and approved if it is a valid lien . . . .

TEX. PROB. CODE ANN. § 306(a)(2).

specifically relied on in the body of the application as the basis for the requested foreclosure.[14]

In paragraph four of the application, CitiMortgage "seeks an order authorizing foreclosure of the Property in conformity with Subsections (f) through (k) of § 306," and requests issuance of show cause citations on the personal representative and persons it says are heirs of the estate in accord with Section 306(g). *See* TEX. PROB. CODE ANN. § 306(g).

The application also seeks an order "authorizing foreclosure in conformity with the security instrument, Tex. Rules of Civil Procedure 735 and 736, and TEX. PROP. CODE § 51.002 as such would pass both constitutional and statutory muster as to the method and means to fairly conduct a public sale."

CitiMortgage attached its affidavit for foreclosure of real property pursuant to Section 306(f) of the Probate Code as an exhibit to the application seeking foreclosure in accord with the requirements of the Code. The affidavit included each of the six elements required by the section of the Probate Code under which it sought to be granted authority. *See* TEX. PROB. CODE

---

[14]Section 306(e)(3) of the Probate Code provides, in relevant part:

> If property securing a claim allowed, approved, and fixed under Paragraph (2) of Subsection (a) hereof is not sold or distributed within six months from the date letters are granted, the representative of the estate shall promptly pay all maturities which have accrued on the debt according to the terms thereof, and shall perform all the terms of any contract securing same. If the representative defaults in such payment or performance, on application of the claimholder, the court shall:
>
> . . . .
>
>     (3)    authorize foreclosure by the claimholder as provided by Subsections (f) through (k) of this section.

TEX. PROB. CODE ANN. § 306(e)(3).

ANN. § 306(f).[15] The order authorizing foreclosure was issued December 14, 2010, six months after the decedent's will was admitted to probate, the timeframe set forth in Section 306(e)(3). *See* TEX. PROB. CODE ANN. § 306(e)(3).

In addition to the fact that (1) the application explicitly states that it was filed pursuant to Section 306(e)(3), (2) the substance of the application cites to the Probate Code, and (3) the foreclosure proceedings were conducted in accord with the Probate Code, the application itself fails to conform to certain Rule 736 requirements. Specifically, the application fails to comply with the following Rule 736 requirements: (1) it is not verified as required by Rule 736(1); (2) it is not styled "In re: Order for Foreclosure Concerning (Name of person to receive notice of foreclosure) and (Property Mailing Address)" as required by Rule 736(1)(A); (3) it does not identify the security instrument encumbering the property by reference to volume and page, clerk's file number, or other identifying recording information found in the official real property records, as required by Rule 736(1)(D); and (4) it does not allege that the debt is secured by a

---

[15]Section 306(f) of the Probate Code provides,

**Foreclosure of Preferred Liens.** An application by a claimholder under Subsection (e) of this section to foreclose the claimholder's lien or security interest on property securing a claim that has been allowed, approved, and fixed under Paragraph (2) of Subsection (a) of this section shall be supported by affidavit of the claimholder that:

    (1)    describes the property or part of the property to be sold by foreclosure;

    (2)    describes the amounts of the claimholder's outstanding debt;

    (3)    describes the maturities that have accrued on the debt according to the terms of the debt;

    (4)    describes any other debts secured by a mortgage, lien, or security interest against the property that are known by the claimholder;

    (5)    contains a statement that the claimholder has no knowledge of the existence of any debts secured by the property other than those described by the application; and

    (6)    requests permission for the claimholder to foreclose the claimholder's mortgage, lien, or security interest.

TEX. PROB. CODE ANN. § 306(f).

lien created under the Texas Constitution for a home equity loan, as required by Rule 736(2). In light of these facts, we find that the application's single reference to Rules 735 and 736 is superfluous and not controlling of the authority by which foreclosure was ordered.

The application was filed in accord with Section 306 of the Probate Code, and the proceedings resulting in the order authorizing foreclosure were conducted in accord with Section 306 of the Probate Code. Although the order makes a statement that an order of sale is to be issued in accord with Rules 735 and 736, we do not believe form should rule over substance. The application itself and the procedures followed indicate that the application was not made pursuant to Rule 736 and, in fact, failed to comply with the requirements of that Rule. Conversely, both the application and proceedings followed indicate that the foreclosure was accomplished in accord with Section 306 of the Probate Code. *See* TEX. PROB. CODE ANN. § 306. The probate court thus had jurisdiction to issue the order authorizing foreclosure.

### 2. Jurisdiction to Adjudicate the Constitutional Claim

For his second basis of contention that the probate court lacked jurisdiction to enter the foreclosure order, Hardesty claims the court was not jurisdictionally permitted to address constitutional issues regarding the validity of the lien. More specifically, Hardesty argues that because the lien failed to comply with Article XVI, Section 50(a)(6)(D) of the Texas Constitution, the probate court lacked jurisdiction. Section 50(a)(6)(D) restricts the amount of home equity loans to eighty percent of the property value. TEX. CONST. art. XVI, § 50(a)(6)(D). Hardesty argues that "[b]ecause this extension of credit is invalid, Hardesty is not constitutionally liable for it, thus the Probate Court had no jurisdiction to order the foreclosure of

17

the Property to satisfy the debt." The issue is whether the probate court had subject-matter jurisdiction to address the constitutional validity of the lien. We conclude that it did.

In support of his contention that the probate court lacked jurisdiction to address the constitutionality of the lien, Hardesty relies on *Cline v. Niblo*, 8 S.W.2d 633, 636 (Tex. 1928). In *Cline*, the court ordered the sale of the decedent's homestead to pay general creditors of the estate. *Id*. at 635. The Texas Supreme Court held that the probate court order was void for want of jurisdiction over the subject matter, as homestead property cannot be sold to pay the ordinary debts of the estate. *Id*. at 638–39. The court did not conclude, however, that the probate court lacked jurisdiction to determine the validity or the constitutionality of the lien against the homestead. Contrarily, the court noted that there can be no doubt that the probate court had jurisdiction to determine what property left by the deceased person was subject to the homestead exemption from forced sale for ordinary debts and whether there were family members remaining who had the right to claim that exemption. *Id*. at 636. The probate court could not, however, order the sale of homestead property that is constitutionally protected from sale. *Id*. *Cline* does not support the proposition that the mere presence of a constitutional question deprives a probate court of jurisdiction.

Here, the probate court had jurisdiction to enforce a valid existing lien against real property that is estate property. TEX. PROB. CODE ANN. § 4B(a)(5), (c)(1). The issue of whether the lien complies with Article XVI, Section 50(a)(6)(D) of the Constitution is an entirely different issue—one which implicates the validity of the foreclosure order. The probate court had jurisdiction to make this determination.

18

## C.      Hardesty's Claim that the Lien Is Invalid Is Barred by Limitations

The home equity loan was closed July 23, 2004.  Hardesty filed his original verified petition and application for a temporary restraining order in district court June 10, 2011, wherein he alleged that "[t]he home equity loan [] provided to Decedent does not comply with section 50(a)(6), Article XVI of the Texas Constitution because the loan violates section 50(a)(6)(B), Article XVI of the Texas Constitution," and sought a declaration from the district court that the loan and security instrument do not comply with Section 50(a)(6)(B).

PrimeLending and CitiMortgage contend that the residual four-year limitations period, which they claim commenced on the date of closing, bars Hardesty's declaratory judgment claim.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051.  Conversely, Hardesty contends that a lien made in violation of the Texas Constitution is void, not voidable, and thus is not subject to any limitations period. Alternatively, Hardesty contends that even if his claim is subject to limitations, the limitations period did not commence until Hardesty provided the holders of the note and lien with the sixty-day notice to cure prescribed by Article XVI, Section 50(a)(6)(Q)(x) of the Texas Constitution.

The essence of Hardesty's argument is that Section 50(c) renders "void but curable" any home-equity lien that does not strictly comply with a provision of Section 50(a)(6).  *See* TEX. CONST. art. XVI, § 50(a)(6), (c).  Consequently, if the lien is void *ab initio*, a statute of limitations does not apply.  Under this reasoning, the void lien constitutes a cloud on the title and can be removed in an equitable action without a limitations period.  *See Ditta v. Conte*, 298

19

S.W.3d 187, 192 (Tex. 2009) ("[A]s long as an injury clouding the title remains, so too does an equitable action to remove the cloud; therefore, a suit to remove the cloud is not time-barred.").

Hardesty relies on *Smith v. JPMorgan Chase Bank, National Association*, 825 F.Supp.2d 859 (S.D. Tex. 2011) (holding noncompliant home equity liens void *ab initio*), *overruled by Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 196 (2013), *as recognized in McDonough v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-189, 2013 U.S. Dist. LEXIS 67545, at \*4–6 (S.D. Tex. May 13, 2013), and *Santos v. CitiMortgage, Inc.*, No. 3:11–CV–2592–M–BK, 2012 WL 1058159, at \*3 (N.D. Tex. Feb.7, 2012) (same), *overruled by Priester*, 708 F.3d at 674.

In *Smith*, the court concluded that the residual four-year statute of limitations did not apply to the plaintiff's claim that the defendant's lien was void under Section 50(a), since "[e]quitable claims to recover property based upon liens that are constitutionally void are not barred by limitations." *Smith*, 825 F.Supp.2d at 868. In so holding, the *Smith* court distinguished *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834 (Tex. App.—Dallas 2008, no pet.). In *Rivera*, the plaintiffs alleged their home equity loan exceeded the eighty percent loan-to-value ratio. In that case, unlike *Smith*, the plaintiffs agreed that the residual four-year statute of limitations applied. *Id*. at 839. Due to this agreement, the *Smith* court determined that "[w]hen the parties do not agree that the four-year residual statute of limitations

applies[,] . . . *Rivera* offers no guidance for the determination of that issue . . . ." *Smith*, 825 F.Supp.2d at 866–67.[16]

In *Santos*, the magistrate judge recommended that a motion to dismiss claims for home equity loan violations based on limitations should be denied. *Santos*, 2012 WL 1065464, at *1. The federal court adopted the recommendation in part and rejected it in part. *Santos* followed the *Smith* case and held that a challenge to the lien claim was not subject to limitations. However, the court also concluded that the claim for forfeiture of all principal and interest due four years before the suit was brought was barred by the residual four-year statute of limitations. *Id*.

The lienholders rely on the Fifth Circuit Court of Appeals' decision in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 196 (2013), and the Dallas Court of Appeals' decision in *Williams v. Wachovia Mortgage Corp.*, 407 S.W.3d 391 (Tex. App.—Dallas 2013, pet. denied), in support of their claim that Hardesty's constitutional claim is barred by the four-year statute of limitations. They contend that a lien that violates Section 50(a)(6) is voidable (not void) because Article XVI, Section 50(a)(6)(Q)(x) of the Texas Constitution allows a lender to cure a lien that would otherwise be invalid.

---

[16]The court noted,

> To hold otherwise—that claims of constitutional violations can be barred by limitations—upsets the checks and balances provided by the constitutional language. The result seen in *Rivera* and the cases following it is that: (1) constitutional infirmities that could be cured in home equity loans are never required to be cured; or (2) borrowers have no remedy to correlate with their rights, which rights have been instituted for the purposes of protecting borrowers from destitution and homelessness and encouraging independence. *Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 634–35 (Tex. 1987) (citing *Franklin v. Coffee*, 18 Tex. 413, 415 (1857)).

*Smith*, 825 F.Supp.2d at 868.

21

In *Priester*, the plaintiffs sought to invalidate a home equity loan five years after the closing date on grounds that the loan violated two provisions of Section 50(a)(6). *Priester*, 708 F.3d at 672–73 (acknowledging claim that loan was signed at plaintiffs' home and plaintiffs did not receive notice of their rights twelve days before closing in violation of Texas Constitution). The plaintiffs notified the lender's predecessor-in-interest of this problem and requested cure under Section 50(a)(6)(Q)(x). *Id*. at 673. When no cure was forthcoming, the plaintiffs filed a declaratory judgment action seeking to declare the loan and the lien void. In deciding whether a statute of limitations applied (meaning the lien was merely voidable), the court stated,

> The decision in *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342 (Tex. 2001), offers indirect support for the applicability of limitations. The court responded to a question certified by this court on the issue of cure, explaining that a lien cured under Section 50(a)(6)(Q) became valid even if it was "invalid" before the cure. *Id*. at 347. Discussing forfeiture, the court stated that "if a lien that secures such a loan is voided," the lender loses all rights to recovery. *Id*. at 346. That language suggests that the Texas Supreme Court considers liens created in violation of Section 50(a)(6) to be voidable rather than void—a "void" lien could not be "voided" by future action.

*Id.* at 674. Further, "[b]ecause a cure provision exists in Section 50(a)(6)(Q), liens that are contrary to the requirements of § 50(a) are voidable rather than void from the start." *Id*. at 674 n.4.

If a lien is merely voidable, as determined in *Priester*, the defect can be cured and is not a cloud on title. *See Doody*, 49 S.W.3d at 346 (stating that lien that may be invalidated at the outset may not support remedy at later date). Therefore, the *Priester* court concluded a statute of limitations period should be applied to all claims under Section 50(a)(6) because it is contrary to the constitutional scheme that a person can indefinitely seek a remedy for a curable title defect.

22

*See Priester*, 708 F.3d at 674 n.4. Once the limitations period has passed, a voidable lien becomes valid. *See id*. at 675. The Fifth Circuit went on to hold that such a claim accrues at the lien's closing, rather than on the date the plaintiff discovers the injury. "The injury occurred when the Priesters created the lien, and there was nothing that made the injury undiscoverable." *Id*. at 676. Accordingly, limitations began at the time of closing. "A lack of knowledge that that was a violation of the law is insufficient to toll limitations." *Id*.

In reaching this decision, the Fifth Circuit expressly declined to follow the reasoning of *Smith* and *Santos*, both of which are relied on by Hardesty. Both of these decisions were effectively overruled by the *Priester* decision, which reached the opposite conclusion, and which is controlling precedent in the Fifth Circuit.

The Texas Supreme Court has not written on this issue. However, at least two appellate courts have followed the reasoning outlined in *Priester*. The first to do so was the Dallas court in the *Williams* decision. In that case, Williams' husband took out a loan on the community's home without the joinder of his wife, representing himself to the lender to be a single man. *Williams*, 407 S.W.3d at 392. Six years after she discovered the home-equity loan and lien, Williams filed suit for declaratory judgment, seeking to have the lien declared void. *Id*. at 392–93, 398. The trial court granted the defendants' motion for summary judgment, which was based in part on the applicability of the four-year residual statute of limitations found in Section 16.051 of the Texas Civil Practice and Remedies Code. *Id*. at 393. Williams argued on appeal that the home equity lien on her homestead was void because she did not sign the agreement granting the lien or consent to it. *Id*. at 395; *see* TEX. CONST. art. XVI, § 50(a)(6)(A). Finding the *Priester*

23

court's analysis persuasive, the *Williams* court held that the noncompliant home-equity lien was merely voidable. *Id*. at 397. As a result, the claim was subject to the residual four-year limitations period and was barred. *Id*. at 398.

More recently, the Fourteenth court followed the *Priester* court's analysis in *Wood v. HSBC Bank USA, N.A.*, 439 S.W.3d 585, 591 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). In that case, Wood filed claims for monetary and declaratory relief based on alleged violations of the home-equity lending protections in Article XVI, Section 50(a)(6) of the Texas Constitution. *Id*. at 588. In holding that a home-equity lien that does not comply with Section 50(a)(6) is voidable, the court relied on *Priester*, stating that the analysis is

> persuasive not only because of its sound reasoning, but also because its conclusion comports with Texas Supreme Court precedent on the key distinction between a void act and a voidable act, which is a party's ability—either through its own action or through the judicial process—to disaffirm, ratify, or confirm a voidable act. *See Brazzel v. Murray*, 481 S.W.2d 801, 803 (Tex. 1972) ("A void act is one entirely null within itself, not binding on either party, and which is not susceptible of ratification or confirmation. . . . A voidable act . . . is binding until disaffirmed, and . . . may be made finally valid by failure within proper time to have it annulled, or by subsequent ratification or confirmation."); *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942); *Murchison v. White*, 54 Tex. 78, 81 (1880); *Cummings v. Powell*, 8 Tex. 80, 85 (1852); *see also Oles v. Curl*, 65 S.W.3d 129, 131 n.1 (Tex. App.—Amarillo 2001, no pet.) ("Simply put, if a supposedly void act can be validated then the act cannot actually be void."); *In re Moreno*, 4 S.W.3d 278, 280–81 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Bayoud v. Bayoud*, 797 S.W.2d 304, 309 (Tex. App.—Dallas 1990, writ denied).

*Id*. at 591. The court held that due to the constitutional cure provision, "homestead liens that do not comply with the constitutional requirements are voidable." *Id*. at 592 (citing *Priester*, 708 F.3d at 674; *Williams*, 407 S.W.3d at 396–97).

24

The claim for declaratory relief here is based on an alleged violation of the home-equity lending protections in Article XVI, Section 50(a)(6) of the Texas Constitution, and is subject to cure. We adopt the reasoning of *Priester* and that of our sister courts to find that because the lien in this case is merely voidable, the four-year residual statute of limitations applies to Hardesty's claim.[17]

Since the lienholders are interposing limitations as a defense, they must shoulder the burden to conclusively prove when Hardesty's cause of action accrued. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) (defendant who moves for summary judgment on affirmative defense of limitations must conclusively prove when cause of action accrued); *Rivera*, 262 S.W.3d at 840. In *Rivera* and in *Williams*, the Dallas court applied the legal injury rule to determine the accrual date: "[t]he general rule governing the accrual of a claim for purposes of limitations is 'the legal injury rule,' which states that a claim accrues 'when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Williams*, 407

---

[17]We appreciate the traditional view that the Texas Constitution would treat unfruitful attempts to encumber homestead property as void. As stated by the Texas Supreme Court long ago,

> The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife, made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution. If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law, and incumber homesteads with liens forbidden by the constitution.

*Tex. Land & Loan Co. v. Blalock*, 13 S.W. 12, 13 (Tex. 1890). However, we recognize that the same Constitution which was many times previously applied to render attempts to circumvent the homestead protection void *ab initio* is the very Constitution that was amended to permit this kind of loan.

25

S.W.3d at 398 (quoting *Rivera*, 262 S.W.3d at 840)). Likewise, *Wood* applied the legal injury rule to determine when the cause of action accrued, rejecting the position that the cause of action accrued on the bank's failure to cure, an argument Hardesty makes here. *Wood*, 439 S.W.3d at 594.

Applying the legal injury rule, Hardesty's claim accrued July 23, 2004, the closing date of the allegedly deficient loan. We note that Hardesty, present with Carolyn at the closing, had actual notice of it. The limitations period thus expired July 23, 2008. Suit was filed June 10, 2011, almost seven years after the closing date. Thus, Hardesty's claim that the lien is not valid is barred by the four-year residual statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051; *Williams*, 407 S.W.3d at 398. The trial court thus did not err in granting appellees' summary judgment based on the limitations bar.[18]

## D.     The Statute of Frauds Bars Hardesty's Fraud Claim Against CitiMortgage

Hardesty alleged that CitiMortgage represented to Hardesty that it would pay taxes on the Property—so long as Hardesty continued to make mortgage payments—until such time as Hardesty "could get title to the Property." Hardesty claims this promise was "a false promise of future performance" because CitiMortgage obtained an order authorizing foreclosure based on

---

[18]Because we find that Hardesty's claim that the loan and resulting lien violate the home-equity lending protections in Article XVI, Section 50(a)(6) of the Texas Constitution is barred by limitations, we need not address the issue whether the loan and resulting lien were, in fact, invalid.

Hardesty further alleged that "Defendants' statements [regarding loan value] were made to induce [Hardesty] and [Decedent] to sign a home equity lien," that "[b]ased on these statements, [Hardesty] instructed [Decedent] to sign the lien documents," and that "[b]ased on Defendants' statements, [Decedent] signed the lien documents." Hardesty contends that "Defendants" thereby fraudulently induced Hardesty, a stranger to the loan transaction, and Decedent, the borrower, into the loan transaction. Hardesty does not address the statute of limitations as it applies to his fraudulent inducement claim. Hardesty's brief indicates his statute of limitations arguments are limited to the claims under the declaratory judgment. We therefore do not address the issue of whether Hardesty's fraudulent inducement claims are barred by limitations.

past due tax payments, and accordingly, CitiMortgage is allegedly guilty of fraud. While CitiMortgage raised various affirmative defenses in its original answer, those defenses did not include the statute of frauds and contractual waiver.

On appeal, Hardesty contends the trial court erred in granting summary judgment in favor of CitiMortgage on his fraud claim because the affirmative defenses of the statute of frauds and contractual waiver were not pled in CitiMortgage's answer.[19] CitiMortgage contends that it properly pled its statutes of frauds defense March 7, 2012—the date of the summary judgment hearing—and these pleadings were considered by the trial court as reflected in its first summary judgment order dated April 2, 2012. While CitiMortgage never affirmatively pled contractual waiver, per se, it claims this defense is subsumed within its statute of frauds defense.

Here, the amended pleading was filed the very day of the hearing. Thus, it was not timely filed, unless filed with leave of court. *See Goswami v. Metro. Savs. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) (applying Rule 63 of the Texas Rules of Civil Procedure). Although there is no indication in the record that leave of court to file the amended pleading was expressly granted by the trial court, leave of court is presumed when (1) a summary judgment states that all pleadings were considered, (2) the record does not indicate that that an amended pleading was not considered, and (3) the opposing party does not show surprise. *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex. 1996). The judgment recited that the court, "after considering . . . all pleadings on file," concluded that CitiMortgage was entitled to summary

---

[19]Hardesty concedes that CitiMortgage's original answer to Hardesty's second amended petition raised the affirmative defense of the statute of frauds, but that answer was not filed until March 7, 2012, more than a month after CitiMortgage filed its first motion for summary judgment on February 3, 2012.

judgment. Nothing in the record indicates that the amended pleading was not considered. Further, Hardesty did not indicate that the late filing caused him surprise. On the contrary, Hardesty's summary judgment response addressed the statute of frauds defense.[20] We presume that CitiMortgage filed its amended pleading with leave of court. *See id.* The trial court, thus, appropriately considered CitiMortgage's statute of frauds defense.

CitiMortgage contends (and we agree with that contention) that its "contractual waiver" defense is subsumed within its statute of frauds defense. This conclusion is based on CitiMortgage's amended pleading, which states that "CitiMortgage affirmatively asserts that Plaintiff's claims are barred by the Statute of Frauds, including, but not limited to, Texas Business and Commerce Code § 26.01 and § 26.02." The language in the loan document on which CitiMortgage relies states,

> THIS WRITTEN LOAN AGREEMENT TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
>
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

The quoted language is almost a verbatim recital of the language required for a notice to comply with Section 26.02(b). *See* TEX. BUS. & COM. CODE ANN. § 26.02(b), (e) (West 2009).

Under the Texas statute of frauds, a loan agreement in which the amount involved exceeds $50,000.00 in value is not enforceable unless the agreement is in writing and signed by

---

[20]We acknowledge that Hardesty objected to the sections in CitiMortgage's motion for summary judgment entitled "Claim Based on Alleged Oral Agreement Barred By Express Terms of Loan Documents" and "Claim Barred By Statute of Frauds" on the basis that these claims were not supported by CitiMortgage's pleadings. The trial court's order stated, "Hardesty's objections are overruled."

the party to be bound or by that party's authorized representative. TEX. BUS. & COM. CODE ANN. § 26.02(b); *see also BACM 2001–1 San Felipe Rd. Ltd. P'ship v. Trafalgar Holdings I, Ltd.*, 218 S.W.3d 137, 144 (Tex. App.—Houston [14 Dist.] 2007, pet. denied) ("To satisfy the Statute of Frauds, all loan agreements involving amounts exceeding $50,000 must be in writing."). Section 26.02 defines "loan agreement" broadly. Subject to exceptions not applicable here, a "loan agreement"

> means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.

TEX. BUS. & COM. CODE ANN. § 26.02(a)(2) (West 2009). This definition specifically includes any promise by a financial institution to "make a financial accommodation" as a "loan agreement." *Id*. CitiMortgage's agreement to pay the taxes for 2007 and 2008 with no interest charged back to Hardesty can fairly be described as a financial accommodation, and thus, as a loan agreement under the statute of frauds.[21] But, as Hardesty points out, the taxes paid by CitiMortgage (even beyond 2008) were only $35,923.50, and thus, do not reach the $50,000.00 statutory floor. So, claims Hardesty, this provision of the statute of frauds cannot bar his fraud claim based on the oral agreement.

CitiMortgage argues that Sections 26.02(d) and (e) prohibit the enforceability of the agreement. Section 26.02(d) provides that a loan agreement that is subject to "Subsection (b) of this section may not be varied by any oral agreements or discussions that occur before or

---

[21]CitiMortgage does not argue that this agreement was incapable of performance within one year.

29

contemporaneously with the execution of the agreement." TEX. BUS. & COM. CODE ANN. § 26.02(d) (West 2009) (footnote omitted). Section 26.02(e) requires, "In a loan agreement subject to Subsection (b) of this section, the financial institution shall give notice to the debtor or obligor of the provisions of Subsections (b) and (c) of this section."[22] TEX. BUS. & COM. CODE ANN. § 26.02(e). In essence, the lending institution must notify the debtor or obligor, in a separate written document, about Section 26.02(d)'s prohibition against oral modifications. *See id.* The oral agreement here is unenforceable, claims CitiMortgage, because it represents a modification of the original loan agreement, which clearly falls within the statute of frauds. CitiMortgage contends the agreement thus fails to comply with Subsection 26.02(d) and the notice requirement set forth in the loan document signed by Carolyn.

Hardesty argues that the language of the quoted notice does not apply to him because he was not a signatory to the loan agreement. That agreement was executed by and between Carolyn and PrimeLending, the predecessor-in-interest to CitiMortgage. Hardesty's argument is based on the logic that because he had no prior obligation to make payments on the loan to CitiMortgage, he, as a stranger to the loan agreement, was not in a position to modify it. Instead, Hardesty claims that he made a new agreement with CitiMortgage for their mutual benefit. Hardesty cites no direct authority for this position. Instead, he relies on *Neal v. SMC Corp.*, 99 S.W.3d 813, 817 (Tex. App. Dallas—2003, no pet.) (revocation requires privity of contract).

___

[22]Subsection (b) states, "A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE ANN. § 26.02(b). Subsection (c) states, "The rights and obligations of the parties to an agreement subject to Subsection (b) of this section shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement. TEX. BUS. & COM. CODE ANN. § 26.02(c) (West 2009).

Because revocation is only available to parties to the contract, Hardesty contends that the alleged modification of the loan contract in this case could have only been accomplished by the parties to the contract. Thus, Hardesty reasons, his agreement with CitiMortgage cannot be a modification of the original loan document. Instead, it was a new agreement which was not barred by the statute of frauds. Further, the language of the notice explicitly states that it applies to the loan agreement "BETWEEN THE PARTIES."[23]

CitiMortgage cites numerous cases which stand for the proposition that a bank's alleged promise to delay foreclosure is barred by the "no subsequent oral modification" provision.[24] These cases do not, however, address the issue of an alleged oral modification of a loan agreement by a non-signatory thereto.

CitiMortgage also relies on one case similar to this one, involving a non-signatory to the loan agreement. In *Kiper v. BAC Home Loan Servicing, LP*, 884 F.Supp.2d 561, 575 (S.D. Tex. 2012), Kiper's wife (the actual borrower) defaulted on her obligation to repay the mortgage loan on the couple's home. Kiper was not a signatory to the note or deed of trust. In his action to enjoin foreclosure, *inter alia*, Kiper alleged he entered into an oral agreement with the lender to defer foreclosure and enter a loan modification. *Id*. at 571. Without discussing the issue of Kiper's non-signatory status to the note and deed of trust, the court held that the statute of frauds

---

[23]Hardesty does not contend that any type of equitable exception should avoid the statute of frauds.

[24]*See Ellen v. F.H. Partners*, No. 03-09-00310-CV, 2010 WL 4909973, at *5 (Tex. App.—Austin Dec. 1, 2010, no pet.) (mem. op.) (Section 26.02 barred enforcement of oral promise to delay foreclosure); *see also Krudop v. Bridge City State Bank*, No. 09-05-111CV, 2006 WL 3627078, at *4 (Tex. App.—Beaumont Dec. 14, 2006, pet. denied) (mem. op.) (no oral modification provision prohibited enforceability of oral modification to delay foreclosure); *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 556 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.) (oral modification of agreement to delay repayment of loan unenforceable).

31

barred Kiper's oral agreement claims, stating, "[T]he statute of frauds bars and makes unenforceable oral modifications to a loan agreement under § 26.02 . . . ." *Id*. "Thus even if the bank orally did promise and approve a loan modification to Kiper, the statute of frauds would preclude recovery on his claim." *Id*.

In light of *Kiper*, CitiMortgage reads Section 26.02 broadly to apply to any mortgage modifications exceeding $50,000.00, regardless of whether the alleged modification was made by a stranger to the loan document. Indeed, the language of Section 26.02(d) can be read this broadly: "An oral agreement subject to Subsection (b) of this section may not be varied by *any* oral agreements or discussions that occur before or contemporaneously with the execution of the agreement." TEX. BUS. & COM. CODE ANN. § 26.02(d) (emphasis added) (footnote omitted). This section does not limit the modification prohibition to parties. It applies to any oral agreement. The oral agreement is described, though, as one that occurs before or contemporaneously with the execution of the agreement. Here, the oral modification occurred subsequent to the execution of the agreement. Subsection (e), however, applies to prior, contemporaneous, or *subsequent* oral agreements. *Id*. at § 26.02(e). The notice set forth in the loan documents explicitly applies to subsequent oral agreements.

The alleged oral agreement amounts to an oral modification of a loan agreement that the Legislature intended to prohibit when it enacted Section 26.02. We hold that the loan

32

modification here was barred by the statute of frauds. Accordingly, the trial court did not err in granting summary judgment on Hardesty's fraud claim.[25]

### E. The Trial Court Acted Within its Discretion in Awarding Attorney Fees to CitiMortgage

In his final point of error, Hardesty contends that the trial court abused its discretion in awarding attorney fees to CitiMortgage because (1) recoverable and non-recoverable fees were not segregated, (2) the conditional appellate fee award is not supported by evidence of reasonableness, and (3) the fee award was not equitable and just.

A court may award attorney fees only if those fees are provided for by statute or by contract. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002). Such fees may be awarded in a declaratory judgment action. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) (court may award costs and reasonable and necessary fees as equitable and just). "An award of attorney's fees is generally inappropriate for defending claims for . . . fraud." *Lindley v. McKnight*, 349 S.W.3d 113, 135 n.26 (Tex. App.—Fort Worth 2011, no pet.) (citing *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 667 (Tex. 2009)).[26]

As a part of its summary judgment motion, CitiMortgage sought the recovery of attorney fees in connection with Hardesty's declaratory judgment action. In support of this request, CitiMortgage attached the affidavit of Joseph P. Regan to its motion. Regan testified that his

---

[25]CitiMortgage further contends that the summary judgment was appropriately granted because Hardesty's fraud claim was barred by res judicata and/or collateral estoppel. Because we decide the fraud claim is barred by the statute of frauds, we need not address the issue of whether that claim is likewise barred by res judicata and/or collateral estoppel.

[26]A trial court's award of attorney fees under the Declaratory Judgments Act is reviewed for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Id*.

primary practice involves business, real estate, and commercial litigation in Tarrant County, Texas, and that he has personal knowledge of reasonable rates for attorneys in Tarrant County for litigation and trial work. Regan, a shareholder in Winstead PC (Winstead) testified that Winstead has, in its representation of CitiMortgage, reviewed documents, investigated and researched the parties' claims, responded to claims for injunctive relief, prepared for and attended hearings, deposed Hardesty, and prepared and filed its motion for summary judgment. The sum of attorney fees incurred at the time the summary judgment motion was filed was $37,264.00. Regan testified that based on his experience and based on the nature of the claims asserted, the hourly rates charged by Winstead were reasonable in Tarrant County for the services performed. Further, Regan testified that the sum of $37,264.00 was reasonable and necessary for the work performed on behalf of CitiMortgage from February 1, 2011, to October 31, 2011.

Hardesty objected to Regan's affidavit because Regan failed to segregate recoverable fees from non-recoverable fees. The trial court thereafter conducted an evidentiary hearing on CitiMortgage's application for attorney fees. At the hearing, Regan outlined his personal knowledge regarding the events of the case and the declaratory relief and fraud claims raised by Hardesty.[27] Regan further testified that (1) ninety percent of the work performed on behalf of CitiMortgage would have been necessary to adjudicate the declaratory judgment claim if there had been no fraud claim asserted, and (2) the total amount of fees, segregated at ninety percent

---

[27]CitiMortgage claims Hardesty failed to timely object to its fee claim. We disagree. Hardesty responded to CitiMortgage's motion for summary judgment on March 2, 2012, and further objected to Regan's affidavit on March 21, 2012. The trial court did not consider the fee claim at the summary judgment hearing, stating in its order that a hearing on fees would be "set for hearing in due course." The fee hearing was conducted on June 25, 2012.

for the declaratory judgment claim, is $40,525.50. When those fees are added to the uncontroverted expenses of $1,854.53, the total segregated fees and expenses are $42,379.65. The trial court found that CitiMortgage was entitled to recover the sum of $42,379.65 for "the reasonable and necessary attorneys' fees and expenses [it] incurred . . . through the trial of this case on Hardesty's declaratory relief claims."

CitiMortgage contends that Regan's testimony appropriately segregated fees incurred in defense of the declaratory judgment action (ninety percent) versus those incurred in the defense of the fraud claim (the remaining ten percent). CitiMortgage thus claims the segregation argument is without merit. We agree. While a claimant must segregate recoverable from unrecoverable fees, the Texas Supreme Court has explained,

> This standard does not require more precise proof for attorney's fees than for any other claims or expenses. Here, [Plaintiff's] attorneys did not have to keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of her petition; an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim.

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006); *see Ropa Exploration Corp. v. Barash Energy, Ltd.*, No. 02-11-00258-CV, 2013 WL 2631164, at *12 (Tex. App.—Fort Worth June 13, 2013, pet. denied) (mem. op.). It was therefore permissible for Regan to offer his opinion that ninety percent of the services rendered for CitiMortgage related to the declaratory judgment claim. Hardesty offered no controverting evidence that CitiMortgage's fees were capable of further segregation, and the trial court awarded only the segregated fees.

Hardesty next contends that the trial court's award of the conditional appellate fee award was not supported by evidence of reasonableness.[28] Where attorney fees are recoverable, the award may include appellate attorney fees. *Jones v. Am. Airlines, Inc.*, 131 S.W.3d 261, 271 (Tex. App.—Fort Worth 2004, no pet.). "To support the award of appellate attorneys' fees, there must be evidence of the reasonableness of the fees pertaining to the appellate work, and the trial court must condition the award of attorneys' fees to an appellee upon the appellant's unsuccessful appeal." *Id.*

Counsel for Hardesty stated (although she did not take the stand and formally testify) that in her appellate experience,[29] conditional appellate attorney fees of $35,000.00 is very high and such a fee is not reasonable. She further stated (that her testimony would be) that the entire appellate fee through a petition in the Texas Supreme Court should be only $25,000.00. The trial court opined that "$35,000 is a [sic] unusual amount of money to request to appeal a case from this Probate Court to our court of appeals." Regan attempted to justify the fee by explaining that the record in this case is voluminous. He further testified that based on his experience, it is not uncommon to see appellate fees to a court of appeals approach $50,000.00 and that in this case, $35,000.00 is a reasonable amount. Counsel further testified that additional fees in the Supreme Court were likewise reasonable.

---

[28]Hardesty also contends counsel did not have sufficient appellate experience to provide conditional fee testimony. Counsel's appellate experience includes seven years as an ex officio member of Winstead's Appellate Practice Group. Counsel testified that he frequently assisted in researching and drafting appellate briefs and has been listed as counsel on such briefs in approximately six to ten cases.

[29]Counsel re-counted extensive experience.

36

The trial court considered this evidence and awarded less than CitiMortgage's request. The conditional fee award was lowered to $25,000.00 in the Court of Appeals, and was likewise lowered to $20,000.00 in the event a petition for review is filed with the Texas Supreme Court.[30] Finally, in the event the trial court's judgment is affirmed in the Texas Supreme Court, CitiMortgage was awarded the additional sum of $10,000.00.[31] In making this award, the trial court took judicial notice of its file and relied, at least in part, on its own knowledge and experience in awarding conditional attorney fees.

The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). We, thus, cannot conclude that the trial court abused its discretion in the grant of the conditional attorney fee award.

Finally, Hardesty attacks the entire fee award as being inequitable and unjust in light of the fact that he has paid CitiMortgage "nearly $90,000" in reliance on a promise that CitiMortgage would not foreclose on the Property. Hardesty claims that the fee award rewards CitiMortgage for breaching its agreement not to foreclose, after having reaped the benefit of Hardesty's detrimental reliance on that agreement.

Trial courts have wide discretion in determining what is equitable and just in awarding attorney fees, and appellate courts will not overturn such a decision unless it is clear from the

---

[30]CitiMortgage requested $25,000.00 for this conditional fee.

[31]CitiMortgage requested $12,000.00 for this conditional fee.

facts the trial court abused its discretion. *McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 731 (Tex. App.—Austin 1999, no pet.). The trial court's conclusion regarding an equitable and just fee award is based on all of the circumstances of the case. *Carpenter v. Carpenter*, No. 02-10-00243-CV, 2011 WL 5118802, at \*5–6 (Tex. App.—Fort Worth Oct. 27, 2011, pet. denied) (mem. op.) (rejecting claim that equitable and just fee award involved fact question, stating instead that issue was question of law, committed to trial court's sound discretion).

Hardesty relies on *Doll v. Hurst*, No. 03-02-00576-CV, 2003 WL 21939711, at \*10 (Tex. App.—Austin Aug. 14, 2003, pet. denied) (mem. op.), in support of his position that the trial court abused its discretion in awarding fees to CitiMortgage. In *Doll*, the court held that a fee award would be inequitable and unjust in light of the fact that the successful counter-defendant had already gained a benefit through the use of the plaintiff's property by way of an easement. *Id*. Such a decision was not an abuse of discretion. *Id*.

Here, the trial court determined that a fee award to CitiMortgage was equitable and just— even though Hardesty made substantial note payments on the foreclosed property. In light of all of the circumstances of the case, we do not find an abuse of discretion. Certainly, the fact that CitiMortgage prevailed in its declaratory judgment action is a factor for the trial court to consider, although that factor alone is not determinative. *See Carpenter*, 2011 WL 21939711, at \*8. Here, the trial court was also aware that recovery of sums Hardesty paid to CitiMortgage was not foreclosed in light of the fact that Hardesty's unjust enrichment and promissory estoppel

38

claims survived summary judgment.[32]  Yet another consideration was the fact that a substantial

sum—in excess of $500,000.00—was owed on the property at the time of foreclosure, and the

foreclosure order was growing stale.  Finally, Hardesty had been living on the property without

making payments for some period of time.  The trial court may well have considered additional

factors, not mentioned here, in concluding the fee award was equitable and just.

Finding no abuse of discretion, we overrule each of Hardesty's complaints regarding the

attorney fee award.

## VI.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:      September 10, 2014
Date Decided:        November 18, 2014

---

[32]These claims were severed by the trial court.

TABLE 1
**Table of Citations**
*In re: The Estate of Carolyn C. Hardesty, Deceased*, 06-13-00048-CV

| FORMER<br>**PROBATE CODE**<br>CITATION | **SESSION LAW CITATION** | CURRENT<br>**ESTATES CODE**<br>CITATION |
|---|---|---|
| TEX. PROB. CODE ANN. § 4A(b) | Act of May 20, 2009, 81st Leg., R.S., ch.1351, § 12(b), sec. 4A, 2009 Tex. Gen. Laws 4273, 4276, *repealed by* Act of May 20, 2009, 81st Leg., R.S., ch. 1351, § 13(b), 2009 Tex. Gen. Laws 4273, 4282. | TEX. ESTATES CODE ANN. § 32.001 |
| TEX. PROB. CODE ANN. §§ 4B(a)(5), 4B(c)(1) | Act of May 20, 2009, 81st Leg., R.S., ch.1351, § 12(b), sec. 4B, 2009 Tex. Gen. Laws 4273, 4276, *repealed by* Act of May 20, 2009, 81st Leg., R.S., ch. 1351, § 13(b), 2009 Tex. Gen. Laws 4273, 4282. | TEX. ESTATES CODE ANN. § 31.002 |
| TEX. PROB. CODE ANN. § 4F | Act of May 20, 2009, 81st Leg., R.S., ch.1351, § 12(b), sec. 4F, 2009 Tex. Gen. Laws 4273, 4278, *repealed by* Act of May 20, 2009, 81st Leg., R.S., ch. 1351, § 13(b), 2009 Tex. Gen. Laws 4273, 4282. | TEX. ESTATES CODE ANN. § 32.005 |
| TEX. PROB. CODE ANN. § 5B(a) | Act of May 23, 1983, 68th Leg., R.S., ch. 958, § 1, sec. 5B, 1983 Tex. Gen. Laws 5228, 5228, *amended by* Act of May 20, 1999, 76th Leg., R.S., ch. 1431, § 1, sec. 5B, 1999 Tex. Gen. Laws 4876, 4876, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 3.06, sec. 5B, 2003 Tex. Gen. Laws 847, 854, *amended by* Act of May 20, 2009, 81st Leg., R.S., ch.1351, § 12(c), 2009 Tex. Gen. Laws 4273, 4278, *amended by* Act of May 29, 2011, 82d Leg., R.S., ch. 1338, § 1.03, sec. 5B, 2011 Tex. Gen. Laws 3882, 3883, *transferred by* Act of May 9, 2013, 83d Leg., R.S., ch. 161, § 6.009, 2013 Tex. Sess. Law Serv. 623, 634. | TEX. ESTATES CODE ANN. § 34.001 |

T<small>ABLE</small> 1
**Table of Citations**
*In re: The Estate of Carolyn C. Hardesty, Deceased*, 06-13-00048-CV

| FORMER<br>**PROBATE CODE**<br>CITATION | **SESSION LAW CITATION** | CURRENT<br>**ESTATES CODE**<br>CITATION |
|---|---|---|
| T<small>EX</small>. P<small>ROB</small>. C<small>ODE</small> A<small>NN</small>. §§ 306(a)(2), 306(e)(3), 306(f), 306(g) | Act of March 17, 1955, 54th Leg., R.S., ch. 55, § 1, sec. 306, 1955 Tex. Gen. Laws 88, 172, *amended by* Act of May 30, 1993, 73d Leg., R.S., ch. 957, § 50, 1993 Tex. Gen. Laws 4081, 4174, *amended by* Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 9, sec. 306, 1995 Tex. Gen. Laws 5207, 5209, *amended by* Act of May 22, 1997, 75th Leg., R.S., ch. 1302, § 13, 1997 Tex. Gen. Laws 4954, 4958, *amended by* Act of May 23, 2005, 79th Leg., R.S., ch. 551, § 6, 2005 Tex. Gen. Laws 1476, 1478, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | T<small>EX</small>. E<small>STATES</small> C<small>ODE</small> A<small>NN</small>. §§ 355.151–.160 |